**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jose LOYA, et al.,**
**Defendants-Appellants.**

**Nos. 85–3167 and 85–3168.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 1, 1986.

Decided Jan. 13, 1987.

Jeffery Ring, Asst. U.S. Atty., Boise, Idaho, for plaintiff-appellee.

James Annest, Burley, Idaho, Robert A. Wallace, Churchill & Wallace, Weiser, Idaho, for defendants-appellants.

Before ALARCON, BOOCHEVER, and REINHARDT, Circuit Judges.

ALARCON, Circuit Judge:

Vicente Celis, Guadalupe Celis, Mansimino Loya, Jose Loya, Sr., and Jose Loya, Jr. appeal from the judgments of conviction entered after a trial by jury. Each appellant was convicted of conspiracy to smuggle, transport, and harbor illegal aliens in violation of 18 U.S.C. § 371 (1982) and 8 U.S.C. § 1324 (1982). Vicente Celis, Guadalupe Celis, Jose Loya, Sr., and Mansimino Loya were also convicted of transporting illegal aliens pursuant to 8 U.S.C. § 1324(a)(2). In addition, Jose Loya, Sr. suffered a conviction of one count of smuggling illegal aliens pursuant to 8 U.S.C. § 1324(a)(1).

We discuss the issues raised by Vicente Celis and Guadalupe Celis in Part I of this opinion. The arguments advanced in support of the appeal by Mansimino Loya, Jose Loya, Sr., and Jose Loya, Jr. are addressed in Part II.

1. 18 U.S.C. § 2 provides:
    (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
    (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

2. 8 U.S.C. § 1325 (1982) provides in pertinent part:
    Any alien who (1) enters the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of any such offenses, be guilty of a misdemeanor and

## PART I

Vicente Celis and Guadalupe Celis have listed nine "issues presented for review" in their opening brief. The only contentions which they have supported with argument and points and authorities concern the failure of the court to instruct the jury that "they could be found guilty of a violation of 8 U.S.C. § 1325 and 18 U.S.C. § 2 as a lesser included offense of a violation of 8 U.S.C. § 1324(a)(2)" and the sufficiency of the evidence to show their knowledge that the aliens last entry into the United States was illegal and occurred within three years.

### A.  Included Offense

■ Vicente Celis and Guadalupe Celis requested that the district court instruct the jury that aiding and abetting[1] an alien to enter the United States illegally[2] is an offense necessarily included in a charge of aiding and abetting the transportation of aliens within the United States pursuant to 18 U.S.C. § 2 (1982) and 8 U.S.C. § 1324(a)(2).[3] We rejected a similar contention in *United States v. Pruitt*, 719 F.2d 975 (9th Cir.), *cert. denied*, 464 U.S. 1012, 104 S.Ct. 536, 78 L.Ed.2d 716 (1983). We stated in *Pruitt*: "[T]he elements of a violation of 8 U.S.C. § 1325 are not contained within the elements of 8 U.S.C. § 1324(a)(2)." 719 F.2d at 978. The dis-

upon conviction thereof be punished by imprisonment for not more than six months, or by a fine of not more than $500, or by both. . . .

3. 8 U.S.C. § 1324(a)(2) provides in pertinent part:
    (a) Persons liable
    Any person, including owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who—. . . .
    (2) knowing that he is in the United States in violation of law, and knowing or having reasonable grounds to believe that his last entry into the United States occurred less than three years prior thereto, transports, or moves, or attempts to transport or move, within the United States by means of transportation or otherwise, in furtherance of such violation of law. . . .

trict court did not err in refusing to give the instruction on included offenses.

### B. Sufficiency Of The Evidence

■ Vicente Celis and Guadalupe Celis assert there is insufficient evidence to show that they had knowledge that the aliens last entry was illegal and occurred less than three years prior to the present offense as required by 8 U.S.C. § 1324(a)(2). Appellants concede, however, that "some circumstantial evidence indicated some of the eight aliens, whose transportation was charged in Counts 37 through 44 of the Indictment, entered under conditions that they recently entered the United States." When the sufficiency of the evidence is challenged, we must affirm "if 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1453 (9th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

Proof that the parties knew they were transporting aliens who had illegally entered the United States within the last three years may be based on circumstantial evidence. *United States v. Fierros*, 692 F.2d 1291, 1295 (9th Cir.), *cert. denied*, 462 U.S. 1120, 103 S.Ct. 3090, 77 L.Ed.2d 1350 (1983) (citing *United States v. Herrera-Medina*, 609 F.2d 376, 380 (9th Cir.1979). Indirect proof may also support an inference that the parties knew the passengers were illegal aliens. *See Herrera-Medina*, 609 F.2d at 380 (future behavior and "the place where crucial events occurred" is sufficient to support an inference of knowledge that the passengers were recently arrived aliens).

The evidence shows that Vicente Celis and Guadalupe Celis transported a number of individuals, including the eight aliens charged in Counts 37–44 of the Indictment, from Arizona to Idaho. The Indictment identified Candido Arteaga-Arteaga, Froilan Tellez-Juarez, Victorino Ruiz-Gil, Gilberto Ceja-Torres, Artemio Leon-Aguilar, Castulo Farfan-Ceja, Francisco Galvan-Hurtado and Joel Galvan-Lira as having been transported in violation of 8 U.S.C. § 1324(a)(2). Four of these individuals, Artemio Leon-Aguilar, Castulo Farfan-Ceja, Francisco Galvan-Hurtado, and Joel Galvan-Lira testified at trial that they were transported by Vicente Celis and Guadalupe Celis. Artemio Leon-Aguilar also testified that Froilan Tellez-Juarez was transported in the same group. Candido Arteaga-Arteaga and Victorino Ruiz-Gil testified that they were transported to Idaho at the same time. Candido Arteaga-Arteaga also testified that Gilberto Ceja-Torres was in the same group.

The evidence shows that Vicente Celis and Guadalupe Celis met these individuals near the United States and Mexican border after nightfall. During the journey to Idaho, the aliens were hidden under cover in the bed of a truck. The evidence of the time and place of these events and the furtive behavior of the passengers is sufficient to support an inference that Vicente Celis and Guadalupe Celis knew that each of these persons was an alien who had entered the United States illegally within the last three years. A rational juror could conclude from the evidence presented that the defendants were guilty as charged.

### C. Effect Of Failure To Present Argument In Support Of Contention On Appeal

■ Vicente Celis and Guadalupe Celis advise us in their opening brief that "[t]his court must review the decision of the District Court ... by deciding whether the trial court abused is [sic] discretion" based on the arguments set forth in the various motions they presented to the trial court. We have no such obligation. Under Rule 28(a)(4) of the Federal Rules of Appellate Procedure, the brief of the appellant must contain "the contentions of the appellant

with respect to the issues presented, and the reasons therefor...."[4]

Issues raised in a brief which are not supported by argument are deemed abandoned. *IOB v. Los Angeles Brewing Co.,* 183 F.2d 398, 401 (9th Cir.1950). Nevertheless, we will review an issue not properly presented if a failure to do so would result in manifest injustice. *United States v. Anderson,* 584 F.2d 849, 853 (6th Cir.1978). Vicente Celis and Guadalupe Celis do not claim that manifest injustice will occur if we decline to review the denial of these pretrial motions. We have examined the questions raised in the district court but not argued here. None of the district court's rulings appear to us to constitute manifest injustice.

## PART II

Jose Loya, Sr., Jose Loya, Jr., and Mansimino Loya seek reversal on the following grounds:

One. The evidence is insufficient to support a rational determination of guilt beyond a reasonable doubt.

a. The evidence is insufficient to connect Jose Loya, Jr. to the conspiracy.

b. The evidence is insufficient to show that Mansimino Loya illegally transported Juventino Paz-Ceja.

c. The evidence is insufficient to show that Jose Loya, Sr. illegally transported any aliens.

Two. The district court abused its discretion in admitting into evidence the statements of a co-conspirator because the existence of a conspiracy was not established by independent evidence.

Three. The district court erred by failing to instruct the jury on the issue of multiple conspiracies.

Four. The district court erred in refusing to instruct the jury concerning the defense of withdrawal from a conspiracy as requested by Mansimino Loya.

Five. The district court erred in instructing the jury, in a case in which an alibi defense has been presented, that it is not necessary for the proof to establish with certainty the exact date of the offense.

Six. The district court abused its discretion in denying the motion for a severance.

We conclude that none of these contentions is meritorious and affirm. We address each contention and the facts pertinent thereto under separate headings.

### A. Sufficiency Of The Evidence

Jose Loya, Sr., Jose Loya, Jr., and Mansimino Loya each contend that the evidence is insufficient to support a conviction of any of the charged offenses. The evidence presented by the government establishes that an agreement was entered into between two or more persons to smuggle aliens into the United States and to transport them to Idaho. In March, April, and May of 1985, Mexican aliens were smuggled into the United States and transported to Idaho in furtherance of the conspiracy. In their joint opening brief, Jose Loya, Sr., Jose Loya, Jr., and Mansimino Loya concede that a conspiracy to smuggle and transport aliens is shown by the evidence. They state "there is sufficient evidence of

---

**4.** Rule 28 of the Rules of Appellate Procedure provides in pertinent part:

    (a) Brief of the Appellant. The brief of the appellant shall contain under appropriate headings and in the order here indicated:

    (1) A table of contents, with page references, and a table of cases (alphabetically arranged), statutes and other authorities cited, with references to the pages of the brief where they are cited.

    (2) A statement of the issues presented for review.

    (3) A statement of the case. The statement shall first indicate briefly the nature of the case, the course of the proceedings, and its disposition in the court below. There shall follow a statement of the facts relevant to the issues presented for review, with appropriate references to the record (see subdivision (e)).

    (4) An argument. The argument may be preceded by a summary. The argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on.

    (5) A short conclusion stating the precise relief sought.

the possibility of multiple conspiracies."[5] Their discussion of the sufficiency of the evidence is addressed to specific counts in the Indictment. We will limit our review to the issues argued and briefed. We address these contentions under separate headings.

### 1. Connection Of Jose Loya, Jr. To The Conspiracy

■ Jose Loya, Jr. argues that the evidence was insufficient to connect him to the conspiracy. We disagree.

Jose Loya, Jr. relying on *United States v. Horton*, 646 F.2d 181 (5th Cir. Unit A May), *cert. denied*, 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 388 (1981) correctly notes that proof of a familial relationship with a conspirator is not sufficient to connect the accused to a conspiracy. Instead, the government must present evidence that the accused participated in the conspiracy with knowledge of its purpose. *United States v. Bailey*, 607 F.2d 237, 243 (9th Cir.1979); *United States v. Weaver*, 594 F.2d 1272, 1274 (9th Cir.1979). Although the connection of the accused to a conspiracy may be slight, such evidence must be sufficient to satisfy a rational juror beyond a reasonable doubt. *See United States v. Bailey*, 607 F.2d at 243 (proof of slight connection is sufficient if any rational trier of fact could have found such connection beyond a reasonable doubt).

Torres-Remes testified that twice in March, Jose Loya, Sr. met him in Mexico to hire him to smuggle a group of people across the border. Jose Loya, Sr. was accompanied by his son, Mansimino, at the first meeting and on the second occasion Jose Loya, Jr. was present. Torres-Remes was unable to tell Mansimino and Jose Loya, Jr. apart when asked to identify them at trial. Torres-Remes stated, "There are two persons there that look alike. I'm not sure if it's him or the one in the jacket." Torres-Remes testified that at the time of the first meeting, Jose Loya, Sr. and his son were accompanied by a young woman with a child. The testimony of other witnesses established that Mansimino Loya was with his father on the first occasion Torres-Remes was hired to smuggle aliens. Mansimino and his wife testified that they took a trip with their son during which they were involved in an incident at a gas station. A police officer testified that on March 24, 1985, he went to a gas station to handle a dispute between Mansimino Loya and a service station attendant near Sells, Arizona. Sells, Arizona is near the Mexican border and within the Papago Indian Reservation.

Torres-Remes testified that Jose Loya, Sr. was with his other son at the second meeting. There is ample circumstantial evidence in the record to support an inference that this person was Jose Loya, Jr. A police officer from the Papago Indian Reservation, located in southern Arizona, testified that he stopped a car occupied by Jose Loya, Sr., Jose Loya, Jr., and Torres-Remes on April 1, 1985. The officer cited Jose Loya, Sr. for not having a driver's license in his possession and took Torres-Remes into custody for questioning by the Border Patrol.

Torres-Remes testified further that during his second meeting with Jose Loya, Sr., they discussed the amount he would be paid for guiding aliens across the Mexican and United States border. The evidence shows that Torres-Remes went with Jose Loya, Sr. and Jose Loya, Jr. to Altar, Sono-

---

5. On page 23 of their opening brief, the appellants state as follows:

> In the case at hand, there is sufficient evidence of the possibility of multiple conspiracies. In defining multiple conspiracies, the Second Circuit has declared, "[M]ultiple conspiracies exist where the evidence shows separate networks operating independently of each other." *United States v. Barlin*, 686 F.2d 81, 89 (2d Cir.1982).

> In this case, there appeared to be an agreement between Layne Harper and his illegals, and prior to his withdrawal, Mansimino Loya.
>
> There was a second possible conspiracy between the defendant, Vega-Medrano, Moses Ramirez and other unknowns.
>
> If the conspirator evidence of Telesforo Remes is considered, another conspiracy possibly was shown between Remes and Loya.
>
> A fourth conspiracy seems established between Gerardo Tellez-Vega and Vicente and Guadalupe Celis.

ra, Mexico, where 37 aliens were waiting to be guided across the border. The aliens were loaded in two trucks and Torres-Remes took them to the United States. Jose Loya, Sr. and Jose Loya, Jr. met Torres-Remes when he arrived with the aliens. Torres-Remes demanded payment. He was paid later in the car when he was traveling with Jose Loya, Sr. and Jose Loya, Jr. Jose Loya, Sr. handed the money to Jose Loya, Jr., who counted it and then gave it to Torres-Remes.

A rational juror could conclude beyond a reasonable doubt that the foregoing evidence is sufficient to show Jose Loya, Jr. participated in an act in furtherance of the conspiracy with knowledge of its existence.

### 2. Sufficiency Of The Evidence That Mansimino Loya Transported Juventino Paz-Ceja

■ Paz-Ceja testified that Mansimino Loya transported a group of aliens within the United States. Mansimino Loya asserts that the government witness' testimony was contradictory and thoroughly impeached by other witnesses. This argument misperceives the function of the jury in a criminal trial and the limited role of an appellate court in reviewing the sufficiency of the evidence. The jury does not have to accept or believe an explanation offered by a defendant. It is free to weigh the explanation and determine whether it is a satisfactory one.

> [T]he responsibility of the trier of fact [is] fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonble inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental protection of due process of law.

*Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis in original) (footnotes omitted).

Paz-Ceja testified that Mansimino Loya transported him to the Cranney farm near Oakley upon their arrival in Idaho. Mansimino Loya argues that Paz-Ceja's testimony was inconsistent with his earlier statement to an immigration officer and contradicted by Pedro Juarez-Cripes' testimony. It is true that this testimony was contradicting and inconsistent. The jury, however, resolved the conflicts of evidence in favor of the prosecution's factual theory and rejected Mansimino Loya's alibi defense. A rational juror could conclude from the evidence against Mansimino Loya that he was guilty of transporting Paz-Ceja.

### 3. The Evidence Was Sufficient To Show That Jose Loya, Sr. Transported Aliens

■ Jose Loya, Sr. contends that there is insufficient evidence to support his conviction for transporting the individuals named in Counts 6 and 23–28. He argues that his alibi testimony and the government's exhibits 25 and 26 demonstrate that he could not have participated in these crimes. Exhibits 25 and 26 were taken from Vicente Celis' wallet. They contain a list of names including the persons named in Counts 23–28. This argument is misleading.

Jose Loya, Sr. does not discuss the evidence presented by the government. Juvenito Paz-Ceja was named in Count 6 as the person transported. Juvenito Paz-Ceja testified he paid Jose Loya, Sr. $500 to bring him from Mexico to Idaho. Pedro Juarez-Cripes, who is named in Count 28, testified that Jose Loya, Sr. took him and the persons identified in Counts 23–27 from the border to Idaho. In viewing the evidence in the light most favorable to the government, we conclude that any rational trier of fact could have found, beyond a reasonable doubt, that Jose Loya, Sr. was guilty of transporting each of these persons.

## B. Admissibility Of Co-Conspirator's Statement

■ Jose Loya, Sr. contends that the district court erred in admitting, over objection, evidence of the extrajudicial statements made by Gerardo Tellez-Vega. Jose Loya, Sr. alleges that these statements were not admissible because his connection to the conspiracy had not yet been established by independent evidence. This argument is devoid of merit. Ample non-hearsay evidence was presented to show that Jose Loya, Sr. hired Torres-Remes and Tellez-Vega to smuggle aliens into the United States for transportation to Idaho. The fact that the district court may have admitted the statement of co-conspirator Tellez-Vega prior to the presentation of independent evidence of the existence of the conspiracy is not error. A district court has the discretion to vary the order of proof in admitting a co-conspirator's statement. *United States v. Turner*, 528 F.2d 143, 162 (9th Cir.1975).

## C. Failure To Instruct On Multiple Conspiracies

■ Jose Loya, Sr., Jose Loya, Jr. and Mansimino Loya assert that the district court had the duty to instruct the jury on multiple conspiracies. An instruction on multiple conspiracies was requested by the appellants. No objection was made on this ground after the jury was instructed and prior to the commencement of deliberation.

Counsel were permitted to read the instructions the court intended to give prior to an informal conference presided over by the district court's law clerk. Counsel's comments and objections regarding the instructions were not reported. Counsel were not informed prior to the reading of the instructions whether the court had considered and acted upon counsel's objections. Counsel were not presented with a copy of the instructions approved by the court prior to the time they were read to the jury.

We are not required to consider a claim of error regarding failure to give an instruction if no objection was made before the trial court.

> No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury.

Fed.R.Crim.P. 30.

Appellants contend that compliance with Fed.R.Crim.P. 30 is excused where "the defendants did make sufficient objection during informal instruction conference." They rely on *United States v. Lisowski*, 504 F.2d 1268 (7th Cir.1974) and *United States v. Nerone*, 563 F.2d 836 (7th Cir. 1977). Their reliance is misplaced.

In *United States v. Lisowski*, the appellant contended that he did make specific objections during the conference on instructions and that these specific objections were not repeated in court because "the district judge instructed counsel to make objections merely in a summary manner for the record." 504 F.2d at 1272. In concluding that substantial compliance with Rule 30 had been demonstrated, the court in *Lisowski* stated as follows:

> The Government, in its brief and in oral argument, did not deny the defendant's statement concerning what transpired. Under the circumstances, we will assume *arguendo* that the district court was sufficiently apprised of the objections to instructions and will not treat the objections as waived but will consider the merits of each objection.

*Id.*

In *United States v. Nerone*, the trial court conducted an informal conference on the instructions prior to reading them to the jury but did not permit a formal specification of objections until after the commencement of deliberations. 563 F.2d at 847. The Seventh Circuit concluded in *Nerone* that the procedure followed by the trial judge "failed to comply with this circuit's

requirements." 563 F.2d at 848. The requirements of the Seventh Circuit for the handling of objections to instructions are set forth in *United States v. Hollinger,* 553 F.2d 535 (7th Cir.1977). In *Hollinger,* the court stated as follows:

> If, however, the judge conducts only an informal conference prior to the giving of the charge as to what requests will be granted or denied and what instructions the judge intends to give, a full opportunity must be given *after the jury has been instructed, but before it begins to deliberate,* for counsel to make a full record on their objections to the charge as given as well as to the denial of requests. Further, ... full opportunity must be given *after the statement of the charge and before the retirement of the jury* to state any additional objections which may have developed as a result of the giving of the charge.

553 F.2d at 543 (emphasis added).

In the matter before this court, the district court fully complied with the requirements of the law of the Seventh Circuit. Appellants were given the opportunity to make a full record of their objections after the jury was instructed but before the jury retired to consider its verdict. Appellants were aware that the only record of their comments on the instructions would be made in court after the instructions were given.

The following colloquy reflects that the trial court explained the procedures it would follow to comply with Rule 30:

> MR. WALLACE (Attorney for Vicente Celis and Guadalupe Celis): Excuse me, Judge, but are we going to get a chance to make a record on objections to jury instructions or is that after arguments?
>
> THE COURT: Under the rule, it's always after arguments, Mr. Wallace. I send the jury out and there will be a chance to make your record. You will have had your chance to look at the jury instructions and to make your comments on them. After which it's up to me to decide what to give, and I will do that.

The only record on instructions under the federal rules are what goes into the transcript. And it works differently up here than in the state, and maybe you are not quite used to that, but that's what happens.

Then you have a chance to make your record following the instructions I give of what objections you have. And that's, of course, after the comments that the Court has welcomed. We have heard from all of you, and we have made some changes here and there in the instructions which we welcome your aid and assistance on that. We appreciate that. And sometimes it comes along, I have to decide what it is I'm going to give. So there will be a time for you to make your record at that time.

After the jury instructions were read, the trial court stated as follows:

> THE COURT: Now is the time, counsel, for any objections you had to the instructions that were just placed in the record by the Court. You may make your record to such objections.
>
> It will also be noted that all counsel have had an opportunity to go over the instructions the Court intended to give and have had a chance to review them.
>
> Some of your suggestions were taken by the Court and revisions made in accordance with your suggestions and several, of course, weren't.
>
> So we'll start with you, Mr. Ring.

Counsel for Jose Loya, Sr., Jose Loya, Jr. and Mansimino Loya objected to certain instructions. No objection was made, however, to the failure to give a multiple conspiracy instruction.

No objection was made to the fact that the law clerk presided over the conference on instructions. The trial judge did not advise counsel of its rulings on the objections raised by counsel at the informal conference. Counsel were not furnished with a copy of the approved instructions after the informal conference. Thus, counsel were forced to determine, by listening to the instruction being read in open court, whether the court had failed to give the

necessary and proper instructions and if the court had correctly stated the law. During this reading counsel did not have the benefit of a finalized written copy or prior information as to the changes the court had made to the earlier version.

The procedure adopted by the trial court contrasts significantly with that which was approved by this court in *Las Vegas Merchant Plumbers Ass'n v. United States*, 210 F.2d 732, 744 (9th Cir.), *cert. denied* 348 U.S. 817, 75 S.Ct. 30, 99 L.Ed. 645 (1954). In *Las Vegas, Merchant Plumbers Ass'n*, the trial judge personally conducted a reported proceeding to listen to counsel's objections on the instructions. *Id.* at 744. The court first informed counsel of the instructions he intended to give the jury. *Id.* Counsel were then advised that they should make their objections to these instructions and take exceptions to the refusal of the court to give specific requested instructions. *Id.* After the jury was instructed, the court permitted counsel to stipulate that "all objections and exceptions heretofore taken by respective counsel for the defendants will be considered as if they were now made at this time and entered in the record and have the same force and effect as if repeated on the grounds heretofore given." *Id.* We held in *Las Vegas Merchant Plumbers Ass'n* that this time-saving procedure substantially complied with Fed.R.Crim.P. 30. *Id. See United States v. Goodman*, 457 F.2d 68, 72 (9th Cir.), *cert. denied*, 406 U.S. 961, 92 S.Ct. 2073, 32 L.Ed.2d 348 (1972) ("With regard to the final instructions, this court has approved the practice of having incorporation by reference of objections after oral delivery of instructions.")

The procedure followed by the trial court precluded the defendants from having an opportunity to read the instructions as they were given to the jury. This preclusion effectively denied them the opportunity to be heard before the court instructed the jury. Although we have serious questions as to the constitutionality of the procedure employed by the district court, our review of the instructions given to the jury as a result of this procedure convinces us that the failure of the court to instruct the jury on the multiple conspiracies did not result in an error requiring reversal.

Appellants argue that under the circumstances of this case, the court's failure to instruct on multiple conspiracies was plain error. However, viewing the evidence as a whole "[w]here the alleged error is harmless, plain error does not exist and review is unwarranted." *United States v. Jarrad*, 754 F.2d 1451, 1457 (9th Cir.), *cert. denied*, — U.S. ——, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985). We need not decide whether the alleged plain error in this case must be harmless beyond a reasonable doubt because, in any event, it meets that standard. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

Appellants, quoting *United States v. Cambindo Valencia*, 609 F.2d 603 (2d Cir. 1979), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980), argue that the district court has a duty where there is a possibility of several conspiracies to instruct the jury that "in order to convict a given defendant, it must ' " 'find that he was a member of the conspiracy in the indictment and not some other conspiracy.' " ' " 609 F.2d at 625 (citations omitted).

The district court in the matter before us instructed the jury as follows:

Now, you must determine whether the conspiracy charged in the indictment existed, and if it did, who its members were. If you find that the conspiracy charged did not exist, then you must return a not guilty verdict, even though you may find that some other conspiracy existed.

Similarly, if you find that any defendant was not a member of the charged conspiracy, then you must find that defendant not guilty, even though the defendant may have been a member of some other conspiracy.

This instruction adequately informed the jury that it could not find a defendant guilty of an uncharged conspiracy even if proved. The failure to instruct further on

multiple conspiracies, as requested by the appellants, did not result in prejudicial error.

### D. Effect Of The Failure To Instruct On Withdrawal

■ Mansimino Loya contends that the district court's failure to instruct the jury on the defense of withdrawal from a conspiracy constitutes prejudicial error. This argument is unmeritorious.

"Withdrawal from a conspiracy requires a disavowal of the conspiracy or an affirmative action that would have defeated the purpose of the conspiracy, or 'definite, decisive and positive' steps to show that the conspirator's disassociation from the conspiracy is sufficient." *United States v. Smith*, 623 F.2d 627, 631 (9th Cir.1980). To avoid complicity in a conspiracy, " 'one must withdraw before any overt act is taken in furtherance of the agreement.' " *United States v. Karr*, 742 F.2d 493, 497 (9th Cir.1984) (quoting *United States v. Monroe*, 552 F.2d 860, 864 (9th Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1069 (1977)). When an agreement is made to accomplish an unlawful objection and an overt act is taken to achieve that agreement then the crime of conspiracy is complete. *United States v. Monroe*, 552 F.2d at 864.

Mansimino Loya argues in his opening brief that he presented evidence that he withdrew from the conspiracy. He claims that he

acted affirmatively to withdraw and abandon any objective of the alleged agreement by, 1–making a telephone call to Harper in which he advised him that the Loya's would not bring in Harper's workers, 2–returning the check uncashed, and 3–returning to Boise State University where he engaged in no acts or events pertaining to the commission of the alleged conspiracy.

This evidence does not show the defense of withdrawal. It also provides no cognizable defense for Mansimino Loya's prior participation in the conspiracy with knowledge of its purpose and no excuse for his acts in furtherance of the conspiracy.

The evidence presented by the government shows that overt acts were committed by Mansimino Loya and others in furtherance of the conspiracy before his purported withdrawal. As set forth above, Paz-Ceja testified that Mansimino Loya transported him and other aliens in violation of 8 U.S.C. § 1324(a)(2). Mansimino Loya's own testimony corroborated the government's evidence that he knowingly participated in a conspiracy. He testified that he took a check from Harper as payment for the transportation of illegal aliens.

Mansimino Loya's purported withdrawal after overt acts had been performed came too late to provide a defense to a charge of conspiracy. The district court did not err in refusing to instruct the jury on the defense of withdrawal.

### E. Propriety Of The "On Or About" Instruction

■ Appellants contend that the court erred in giving the following instruction to the jury:

You will note the indictment charges that certain offenses were committed on or about a certain date. It is not necessary that the proof establish with certainty the exact date of the alleged offenses.

It is sufficient if the evidence shows beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

No objection was made to the giving of this instruction before the jury commenced its deliberations as required by Rule 30. Therefore, we must review this contention under the plain error standard.

Appellants claim that the court's instruction is improper and prejudicial where an alibi defense has been presented. The same argument was rejected by the Fifth Circuit in *United States v. King*, 703 F.2d 119 (5th Cir.), *cert. denied*, 464 U.S. 837, 104 S.Ct. 127, 78 L.Ed.2d 123, 464 U.S. 845, 104 S.Ct. 148, 78 L.Ed.2d 138 (1983). The court in *King* concluded that a defendant is

not prejudiced by an "on or about" instruction where the following factors are present:

> (1) the defendants were allowed to vigorously cross-examine the government's key witness and attack his credibility; and (2) the trial court instructed the jury, in addition to instructions on the presumption of innocence, burden of proof, alibi, and reasonable doubt, that proof the offense was committed on a date reasonably near the date alleged was sufficient.

703 F.2d at 124 (citing *United States v. Arteaga-Limones*, 529 F.2d 1183, 1194 (5th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976) (footnote omitted).

We agree with the Fifth Circuit's analysis of this issue. The record shows that the government's witnesses were thoroughly cross-examined. Their credibility was vigorously attacked. The jury was instructed on the presumption of innocence, burden of proof and reasonable doubt. The government's evidence established that the events occurred on a day reasonably near the date alleged. Appellants failed to request an instruction on alibi. Under these circumstances, the challenged instruction did not affect the fundamental fairness of the trial. *See United States v. Goodrich*, 493 F.2d 390, 394 (9th Cir.1974) (the giving of an "on or about" instruction is harmless error where it is obvious the jury rejected the defendant's alibi for the specific date on which the prosecution witnesses testified that the crime occurred).

### F. Reviewability Of The Denial Of The Motion For Severance

■ Appellants claim that the district court abused its discretion in denying their motion for a severance. Appellants made a pretrial motion for a separate trial under Rule 8 and Rule 14 of the Federal Rules of Criminal Procedure. "In this circuit, to preserve the issue on appeal, a motion to sever must be renewed at the close of the evidence or it is waived." *United States v. Burgess*, 791 F.2d 676, 678 (9th Cir.1986).

The motion was not renewed at the close of evidence. We decline to review this issue because it was not preserved on appeal.

The judgments are AFFIRMED.