944 F.2d 910
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Cesar CRUZ-PLATERO, Defendant-Appellant.
 No. 88-5332.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 12, 1991.*
Decided Sept. 12, 1991.
 
 1
 Before WILLIAM A. NORRIS, DAVID R. THOMPSON, Circuit Judges, and KING, District Judge.**
 
 
 2
 MEMORANDUM***
 
 
 3
 Appellant argues that his convictions by a jury for conspiracy to harbor illegal aliens, 18 U.S.C. § 371, and harboring illegal aliens, 8 U.S.C. § 1324(a)(1)(C), should be set aside for lack of evidence. We disagree and affirm.
 
 
 4
 The standard of review for sufficiency of the evidence is ordinarily whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in the original). Because the defendant did not renew a motion for judgment of acquittal pursuant to Fed.R.Crim.P. 29, however, the defendant is deemed to have waived his objection to the sufficiency of the evidence. United States v. Comerford, 857 F.2d 1323, 1324 (9th Cir.1988), cert. denied, 488 U.S. 1016 (1989). We therefore review the evidence only for plain error. United States v. Mora, 876 F.2d 76, 77 (9th Cir.1989).
 
 
 5
 Appellant contends the evidence is insufficient for two reasons. First, appellant contends that the testimony of the undocumented illegal aliens "[u]nder the circumstances is not worthy of belief." Second, appellant characterizes the evidence as consisting solely of testimony by two aliens and evidence that phone calls were made between defendant's house and the drop house at which the aliens were kept. Defendant claims that the phone calls were not made by him, and suspects they were made by his brother-in-law, who had a friend at the drop house.
 
 
 6
 Appellant, in essence, asks the court to revisit the credibility of different witnesses. The jury apparently chose not to believe defendant's testimony that calls from the drop house to his home were made by his brother-in-law. The jury heard the in-court testimony of two aliens, and defendant has not presented any legal argument for finding the testimony of the two witnesses who identified him "not worthy of belief." Appellant's strongest critique of the evidence is that one alien who identified him at trial did not identify him in a pretrial deposition. Appellant, however, had sufficient opportunity to make the same argument to the jury.
 
 
 7
 Although defendant argues as if the government offered no other evidence besides the in-court identifications and the evidence of phone calls from his home to the drop house, he does not contest any of the other evidence the government presented. Witnesses saw the defendant drive aliens from San Diego to the drop house and guard them while they were there. INS agents who watched the drop house testified that they saw twenty Latin persons enter the house from a truck in which they had been hidden under blankets. INS agents that entered the house testified that they found 37 illegal aliens in the house. From this testimony, a rational jury could have found the existence of a drop house, the presence of illegal aliens, and inferred that the appellant conspired to harbor them there.
 
 
 8
 Appellant has not identified any case in which we have reversed a conviction supported by such strong evidence nor does he distinguish United States v. Loya, 807 F.2d 1483 (9th Cir.1987), on which the government relies. Loya affirmed the conviction of a son convicted of conspiring with his father to harbor illegal aliens. The evidence there linked the son to meetings with Torres-Remes, a man hired to smuggle aliens. Torres-Remes asserted that he discussed the plans with the father and a son, but at trial could not distinguish one son from the other. The government identified the defendant as the son at the meetings by testimony from a police officer that the father, son, and Torres-Remes were together when he stopped their car around the time of a second meeting, in which Torres-Remes testified they discussed the plan to smuggle aliens. Id. at 1488. Evidence showed that Torres-Remes went with the father and son to a border area, where 37 aliens were waiting to be guided across the border. Id. When the father and son met Torres-Remes in the United States, the father gave money to his son to count, who then handed it to Torres-Remes.
 
 
 9
 The evidence of an agreement to harbor illegal aliens and overt acts in furtherance of the conspiracy, see United States v. Ayers, 924 F.2d 1468 (9th Cir.1989), is no weaker here than in Loya. The court inferred a criminal conspiracy in Loya from the son's presence at meetings with his father, his presence with illegal aliens, and his counting of money. Here the government has offered evidence that the defendant was in a drop house several times, drove aliens to the drop house, and guarded them. The doubt raised by one alien's failure to identify the defendant before trial here is no stronger than that raised by the failure of the smuggler to distinguish one son from the other in Loya.
 
 
 10
 For similar reasons, the evidence supports each of the elements of the crime of harboring illegal aliens: 1) those described as harbored were in fact illegal aliens; 2) defendant knew they were aliens, or acted in reckless disregard of this knowledge; and 3) the defendant helped the aliens remain in the United States illegally. See United States v. Rubio-Gonzalez, 674 F.2d 1067 (5th Cir.1982). To prove the first element, the government offered testimony of three aliens harbored at the drop house that they were in the United States illegally. To prove the second element, the government offered evidence that the house was a drop house by INS agents' testimony that they saw persons hide under blankets in a truck that stopped at the house. To prove the third element, and in further proof of defendant's knowledge that they were aliens, the government offered testimony by aliens that defendant guarded them to prevent them from escaping and that he called their relatives to obtain payment for their release.
 
 
 11
 The judgment of the district court is AFFIRMED. The motion of appellant's counsel to be relieved is DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 Honorable Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3