29 F.3d 631
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jesus Maria FIGUEROA, Defendant-Appellant,
v.
UNITED STATES of America, Plaintiff-Appellee.
 No. 93-50245.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 7, 1994.*
Decided June 29, 1994.
 
 Before: D.W. NELSON, BEEZER, and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Jesus Maria Figueroa ("Appellant") appeals his conviction on one count each of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. Sec. 846, and possession with intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1). We affirm.
 
 I.
 
 3
 Appellant does not challenge the existence of a drug-distribution conspiracy. Rather, he maintains that no rational trier of fact could conclude beyond a reasonable doubt that he had the requisite "slight connection with the conspiracy" that could demonstrate "knowing participation in the conspiracy." United States v. Garza, 980 F.2d 546, 552 (9th Cir.1992); accord United States v. Wiseman, No. 93-10097, slip op. 5943, 5950 (9th Cir. June 3, 1994).
 
 
 4
 It is true that there was no evidence that Figueroa was involved in the conspiracy prior to the August 5, 1992, transaction date, that Figueroa ever was shown how the special "trap" compartment in the car provided by the DEA agents worked, or that he received any compensation for driving the load car. However, the DEA informant, Pinedo, testified that, when he approached the load car at the transaction point (the Bombay Bicycle Club), he examined the "trap" compartment and asked one of the conspirators, Gamez-Camacho, where the remaining ten kilograms of cocaine were located. According to Pinedo, Gamez-Camacho said "they're at the house" and that Figueroa, who was standing next to the car, said "it's too late right now" and that "we could do it tomorrow." ER at 84. Later, Pinedo testified that he understood Figueroa to mean that "we'd do that other 10 [kilograms] the next day." Id. at 88.
 
 
 5
 "[W]e must 'assum[e] that the jury resolved all ... matters in a manner which supports the verdict.' " Garza, 980 F.2d at 552 (quoting United States v. Goode, 814 F.2d 1353, 1355 (9th Cir.1987)). It is a reasonable inference from Figueroa's statements as recounted by Pinedo that Figueroa not only knew of the existence of the drugs, but also of the conspiracy to sell the cocaine and of his role in it. Although Pinedo's testimony was not consistent in places, it was for the jury to resolve any inconsistencies. See, e.g., United States v. Loya, 807 F.2d 1483, 1489 (9th Cir.1987) ("It is true that this testimony was contradicting and inconsistent. The jury, however, [was entitled to] resolve[ ] the conflicts of evidence in favor of the prosecution's factual theory....").
 
 
 6
 However, the jury had before it more than Pinedo's testimony. Figueroa drove with two admitted conspirators, Gamez-Camacho and Rocha, to the point at which the load-car was picked up from the DEA agents. Gamez-Camacho obtained the load car, and the three men (driving in the two cars) then drove to a residence in Pomona, where they entered and left the residence. See SER at 104-05. While Gamez-Camacho drove off to a second residence, and ultimately back to the Pomona residence, Rocha and Appellant went on a number of errands. The motion detector in the load-car's special "trap" compartment sensed motion at both the second address and at the Pomona address, and later, after Appellant's, Gamez-Camacho's and Rocha's arrest, eleven kilograms of cocaine were discovered at the Pomona address. See id. at 134-35, 165-66. The two cars then met at Peck Road, where Gamez-Camacho and Appellant switched cars. Appellant, now driving the load-car alone, then proceeded with Gamez-Camacho and Rocha back to the Bombay Bicycle Club, at which the events recounted by Pinedo occurred.
 
 
 7
 Appellant thus spent over six hours with the conspirators, during which he entered the residence in which narcotics later were discovered, participated in the picking up of the load car, and later drove the load-car back to the transaction point. When these facts are combined with Appellant's statement to Pinedo, from which, as discussed above, it could be inferred that he knew of the existence of the drugs and of the conspiracy, it cannot be contended that Appellant's conduct was "perfectly consistent with that of an innocent person having no stake or interest in drug transactions." United States v. Penagos, 823 F.2d 346, 349 (9th Cir.1987). Rather, the evidence supports the jury's conclusion that Appellant "had knowledge of the conspiracy and acted in furtherance of it." Wiseman, slip op. at 5950 (quoting United States v. Bautista-Avila, 6 F.3d 1360, 1362 (9th Cir.1993) (emphasis in original)). Indeed, we note that the evidence against Appellant in this case is stronger than in Wiseman or any of the cases discussed therein in which conspiracy convictions were reversed, see Wiseman, slip op. at 5952-54, and is just as strong as in United States v. Guzman, 849 F.2d 447 (9th Cir.1988), in which the conviction was affirmed.[1] Accordingly, we affirm the conviction on the conspiracy count.
 
 II.
 
 8
 Appellant also challenges his conviction on the possession charge. To prove possession with intent to distribute, the government must demonstrate that Appellant "(1) knowingly (2) possessed the [narcotic] (3) with intent to distribute it." United States v. Mora, 876 F.2d 76, 77 (9th Cir.1989).
 
 
 9
 We previously have held that "when one drives a car laden with contraband, there is a substantial basis from which the trier of fact may infer the driver has knowing possession of the contraband." United States v. Haro-Portillo, 531 F.2d 962, 963 (9th Cir.1976) (citing United States v. Zamora-Corona, 465 F.2d 427 (9th Cir.1972)); see also United States v. Torres-Rodriguez, 930 F.2d 1375, 1382 (9th Cir.1991). As recounted above, Appellant drove a car loaded with ten kilograms of cocaine from the point at which he switched cars with Gamez-Camacho to the Bombay Bicycle Club. Certainly, Appellant had "exclusive dominion over [the] property on which [the] contraband is found" from which knowing possession can be inferred. United States v. Savinovich, 845 F.2d 834, 837 (9th Cir.), cert. denied, 488 U.S. 943 (1988). Moreover, the inference of possession with the requisite intent that Haro-Porlillo permits is strengthened in this case by Figueroa's statement to Pinedo that "it's too late" and that the remainder of the transaction could be accomplished the next day. Consequently, we also affirm the conviction on the possession count.
 
 
 10
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In Guzman, the defendant switched cars with another man, and the two then drove to a van. Previously, the other man had placed a package in the trunk of the car that Guzman subsequently took over. The two then parked, and, after two conversations at the van, Guzman took the package from the trunk of the car to a tractor-trailor. Later, Guzman drove off and the van was discovered to contain $26 million worth of cocaine. See Guzman, 849 F.2d at 447-48. The only material difference between this case and Guzman is that, rather than taking a package out of the car, Appellant indicated to Pinedo that the remainder of the transaction could be accomplished the next day. However, the express statement by Figueroa, if anything, is stronger evidence of knowing participation in the conspiracy than was Guzman's conduct