**Jerry Bartlett JONES, Jr., Petitioner–Appellee–Cross–Appellant,**

v.

**Tana WOOD, Respondent–Appellant–Cross–Appellee.**

**Nos. 99–35029, 99–35310.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 18, 2000

Decided March 10, 2000

---

558

Donna H. Mullen, John J. Samson, Assistant Attorneys General, Olympia, Washington, for the repondent-appellant-cross-appellee.

David B. Zuckerman, Seattle, Washington, for the petitioner-appellee-cross-appellant.

Before: REINHARDT and THOMAS, Circuit Judges, and SEDWICK,[1] District Judge.

THOMAS, Circuit Judge:

In *Jones v. Wood*, 114 F.3d 1002 (9th Cir.1997) (*"Jones I"*), we remanded this case for an independent review of the state record and an evidentiary hearing concerning Jones' ineffective assistance of counsel claim. After considering the magistrate judge's report and recommendations, the district court granted a writ of habeas corpus. We review de novo the district court's grant of a writ of habeas corpus, *see Schell v. Witek*, 181 F.3d 1094, 1097 (9th Cir.1999), and review the district court's findings of fact for clear error, *see Houston v. Roe*, 177 F.3d 901, 905 (9th Cir.1999).

I

The predicate factual setting was described in *Jones I*, obviating the need to discuss it in detail here. Jerry Jones was convicted of killing his wife, Lee Jones. In

---

**1.** The Honorable John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation.

his habeas petition, he alleged that his trial counsel ineffectively assisted him by failing to (1) investigate a strong alternative suspect, Danny Busby; (2) test the physical evidence; and (3) advise him about a plea offer. In *Jones I*, we held that Jones was entitled to an evidentiary hearing on the adequacy of pre-trial investigation of the alternative suspect and the physical evidence.

After discovery on remand, the physical evidence tests proved inconclusive and Jones therefore withdrew his claim that his trial lawyer had ineffectively assisted him by failing to test the physical evidence. The magistrate judge conducted an evidentiary hearing on the remaining allegation. At the hearing, the evidence showed that Jones' trial attorney had been informed within days of Jones' arrest that the family suspected that Busby had committed the crime. Busby, who was an acquaintance of daughter Beth Jones, had frequently visited the family home when Beth's parents were absent, threatened to break into the home when the family was vacationing, and had telephoned several times on the night of the murder. Trial counsel was also informed that Busby did not have a persuasive alibi for his location at the time of the murder. However, neither Busby nor any witness with knowledge of Busby's actions was contacted by the defense before the trial.

After the conviction, Jones' trial counsel hired a new investigator, who ascertained that Busby had not been truthful about his activity on the night of the murder and that other witnesses did not verify his story. The investigator learned that Busby had written sexually explicit notes and several derogatory letters to Beth about Lee and Tommy Jones. In some of those notes, Busby repeatedly mentioned how sexy he found the victim. The investigator discovered that Busby had attempted to enter Beth's window on several occasions, that he continually attempted to scare Beth's younger brother by growling at him, that Jerry Jones had escorted him off

the Jones' property, that Jerry and Lee Jones had forbidden him to telephone Beth, and that Busby had boasted he could break into her house at any time. Beth also informed the investigator that Busby had gotten into her handbag on several occasions and that her house key was missing. Armed with this new information, Jones' trial counsel moved for a new trial. However, his motion was denied and the denial upheld by the Washington Court of Appeals.

At the evidentiary hearing on remand, Busby was asked whether he had murdered Lee Jones. He asserted his privilege against self-incrimination and his lawyer indicated he would continue to claim the privilege. Evidence presented by a number of witnesses established that Busby had not been truthful in his initial statements to the police. Both Busby and his mother told the police that Busby had been home all night. Where Busby spent the night of the murder is unknown. At the hearing, evidence was presented that Busby stayed at the home of David Fisher, where he called the Jones' house several times. He departed between 9:00 and 9:30 p.m. by bicycle. At 9:45 p.m., Fisher received a phone call from Busby asking if Fisher wanted to join him at Beth Jones' house because there were police cars there. Jones first telephoned 911 at 9:51 p.m. and the first officers did not arrive until 10:04 p.m. The Jones' residence was not on the path of travel between Fisher's house and Busby's. Busby's mother initially informed police that Busby had been home at 9:30, but Busby's sister testified he did not come home at all that evening.

Beth Jones testified that Busby had visited her house at least once a week over a thirty month period. Busby was familiar with the layout of the Jones' home, not only because of his frequent visits but because his house was in the same subdivision and had the same layout. Busby usually visited Beth around 9:30 or 10:00 on Friday or Saturday night when her parents were out of the house dancing.

She did not tell her parents of his visits for fear of punishment, as Busby had been banned from the house. Busby usually scared Thomas by growling. In fact, Thomas stated that he heard growling noises in the house on the night of the murder and thought that wild animals had attacked his mother.

Busby had threatened to break into the Jones home in 1988, when the Jones were vacationing in Oregon. In response, Beth told Busby her house would be locked, but he said he would still be able to break in. He told her he had broken into other homes in the neighborhood. Beth testified Busby had taken things from her handbag at school and that she was missing a house key she had kept in the bag. The key was to the side door leading to the garage—the door that was found ajar on the night of the murder.

Beth Jones also testified that Busby and her mother did not get along and that her mother had a strong dislike for him. At times, Busby would refer to Beth's mother as "sexy;" on other occasions, he told Beth that he hated her mother in a "very extreme" manner. She testified that Busby had forced her parents to throw him off the property because he would not leave. When Busby had inquired of her plans early on the day of the murder, Beth had responded that she would be home babysitting Thomas while her parents were out dancing. However, her parents decided not to go out, and Beth went to a party. She did not inform Busby of her change in plans.

Evidence was also introduced that Busby had written letters and made notations in Beth's yearbook containing sexually explicit statements about Beth's family. Jones also sought to introduce evidence of other crimes and tortious conduct allegedly committed by Busby, including:

- A restraining order issued against Busby based in part on allegations that Busby had threatened to murder a woman.
- A call to the police requesting court security in response to a threat Busby had made in the course of a misdemeanor case to kill all court personnel.
- An incident report indicating that Busby had admitted breaking into a pop machine using a stolen key and that he had broken into other machines by the same method.
- A police report indicating that Busby had made telephone calls threatening to kill the new boyfriend of Busby's ex-girlfriend.
- A report indicating Busby had violated a protective order by telephoning the victim 25–30 times and threatening to kill her.
- A docket sheet indicating that Busby had screamed obscenities at court staff when he was told that an additional charge had been filed.
- A charge that Busby had trespassed on the premises of Best Rentals and stolen property.
- A charge that Busby had again violated a domestic violence anti-harassment order.
- A charge of criminal trespass.
- A charge of residential burglary, felony harassment and telephone harassment in which it was alleged that Busby had broken into a woman's home and threatened to kill her.
- A charge of domestic violence felony violation, felony harassment and intimidating a witness arising out of an incident in which Busby allegedly beat up a woman, cut her with broken glass, assaulted witnesses and threatened to kill them if they went to the police.
- An allegation by a woman that Busby had raped her at knifepoint.
- Evidence that Busby had threatened to cut off his girlfriend's head, and that Busby was known to carry knives at times.

The magistrate judge refused admission of the evidence and also precluded any examination of Busby after he asserted his right against self-incrimination.

## II

■ To succeed on a claim for ineffective assistance of counsel, a petitioner must demonstrate: 1) that counsel's performance was deficient, meaning that it was unreasonable given prevailing professional norms; and 2) that the deficient performance prejudiced the defense, meaning that there is "reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland v. Washington,* 466 U.S. 668, 687–93, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ Both the magistrate judge and district court held that Jones' trial counsel performance was deficient because he failed to investigate adequately the possibility that Busby had committed the crimes. Wood does not seriously contest this on appeal[2] and trial counsel's failure to investigate Busby is virtually undisputed. Rather, Wood contends that Jones has failed to establish prejudice from the error. She contends that Jones cannot establish a proper foundation for the admission of any evidence concerning Busby and, therefore, there can be no prejudice.[3]

■ Under Washington law, before evidence implicating another suspect can be admitted, "there must be such proof of connection with the crime, such as a train of facts or circumstances as tend clearly to point out some one besides the accused as the guilty party." *State v. Downs,* 168 Wash. 664, 13 P.2d 1, 2 (1932). Evidence of motive, ability and opportunity for a third person to commit a crime is not sufficient foundation for the introduction of other suspect evidence. *See State v. Rehak,* 67 Wash.App. 157, 834 P.2d 651 (1992). Such evidence must be "coupled with other evidence tending to connect such other person with the actual commission of the crime charged." *State v. Maupin,* 128 Wash.2d 918, 913 P.2d 808, 813 (1996) (quoting *State v. Kwan,* 174 Wash. 528, 25 P.2d 104, 106 (1933)). However, a lesser foundational restriction applies to cases involving circumstantial proof of crime:

> [I]f the prosecution's case against the defendant is largely circumstantial, then the defendant may neutralize or overcome such evidence by presenting sufficient evidence of the same character

2. Wood's only reference in briefing is a passing reference that the petitioner has the "difficult burden" of proving constitutionally deficient assistance. Jones argues that Wood is precluded from raising this issue at all because she did not object to the magistrate's report and recommendations on this issue. Failure to object to a magistrate judge's recommendation waives all objections to the judge's findings of fact. *See Turner v. Duncan,* 158 F.3d 449, 455 (9th Cir.1998). However, in this circuit, failure to object generally does not waive objections to purely legal conclusions. *See id.* A claim of ineffective assistance of counsel is a mixed question of fact and law, subject to de novo review. *See Seidel v. Merkle,* 146 F.3d 750, 753 (9th Cir. 1998). Thus, we do not consider Wood to have waived her objections to the conclusion that Jones' trial counsel ineffectively assisted Jones by failing to conduct an adequate pretrial investigation of the alternative suspect. However, failure to argue an issue in the opening brief does constitute waiver. See *Officers for Justice v. Civil Serv. Comm'n,* 979 F.2d 721, 726 (9th Cir.1992) (holding that a party may not assert error on appeal unless the issue is "specifically and distinctly" raised in its opening brief).

3. Jones contends that Wood's argument is precluded under the law of case doctrine, arguing that *Jones I* established prejudice. However, *Jones I* merely held that the district court had erred in granting summary judgment on the question of ineffective assistance of counsel. It did not make an ultimate finding on that issue, but rather remanded to the district court for an evidentiary hearing and independent examination of the record. Thus, we did not make a conclusive finding on that issue, nor would it have been possible for us to do so because we did not have the state court record before us.

tending to identify some other person as the perpetrator of the crime.

*State v. Clark,* 78 Wash.App. 471, 898 P.2d 854, 858 (1995).

The magistrate judge agreed with Wood's analysis and recommended that the district court hold that *Strickland* prejudice had not been established. The district court declined to adopt the recommendation, holding that Jones would be entitled under *Clark* to offer other suspect evidence.

■■■ The district court was correct. The prosecution's case was almost entirely circumstantial. Thus, under *Clark,* Jones was entitled to offer "evidence of the same character tending to identify some other person as the perpetrator of the crime." *Id.; see also Leonard v. Territory,* 2 Wash.Terr. 381, 7 P. 872, 878 (1885). Furthermore, there was direct evidence tending to connect Busby with the crime: a call to one of his friends places him at the crime scene around the time of the murder and the "growling" noises that Tommy Jones heard in the house just before the murder were the same type of sounds Busby had used in the past to frighten Tommy away. Thus, under either *Downs* or *Clark,* the evidence was admissible. In addition, as Jones points out, the prosecution theory was that there was no other person who could have committed the crime—a theory that Jones was entitled to rebut once the prosecution relied upon it.[4] Thus, because the other suspect evidence was admissible under Washington law,

Jones has established *Strickland* prejudice.[5]

### III

■■■ The district court held that the evidence was sufficient to support a first degree murder conviction. When reviewing the sufficiency of the evidence to support a conviction, the salient question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This is a high standard and the petitioner does not meet it in this case. It is not enough that we might have reached a different result ourselves or that, as judges, we may have reasonable doubt. Although the evidence was almost entirely circumstantial and relatively weak, it was sufficient to support the conviction.

On the evening of the murder, Jones was alone in the house with his wife and their five-year-old son. He made contradictory statements about the events, telling his neighbor he had been watching television when the crime was committed and telling the police that he was preparing to shower. Lee Jones was stabbed over sixty times, creating doubt that Jerry Jones would not have heard the crime. Although not conclusively ruling out other hypotheses, the blood spatter evidence was consistent with the husband committing the crime. From the trial testimony, a juror could reasonably believe that Jones had attended to his own wounds and at-

---

4. Wood also argues that the Washington state courts have already resolved the question of admissibility in this case and that we must defer to that judgment. The Washington courts, in fact, have not decided whether the tender evidence would be admissible. Potential admissibility was discussed in the context of a motion for a new trial, to which a different analysis applies. *See State v. Williams,* 96 Wash.2d 215, 634 P.2d 868 (1981). In addition, the foundational basis that Jones now relies upon for admission is different from the foundation urged by Jones' trial counsel. Thus, we are not obligated to follow a deci-

sion made in a different procedural context and based on a different evidentiary foundation.

5. Resolution of this issue makes it unnecessary for us to reach the other issues raised by Jones concerning the magistrate judge's conduct of the hearing, namely exclusion of crimes Busby had subsequently committed and limitation of the questioning of Busby after he asserted his privilege against self-incrimination.

tempted to clean his clothes while his wife was bleeding to death in the bathroom. A juror could reasonably believe from the testimony that the wounds on Jones' hand were caused by the hand slipping on the knife while stabbing. From the evidence of previous separation, a juror could reasonably believe there was discord in the marriage.

 Certainly, the prosecution's interpretation of the evidence is—and was—subject to debate. Credible evidence was presented, for example, that the couple had reconciled and that Jerry Jones had no history of violence of any kind. There are other plausible explanations that counter the remaining evidence against him as well. A key question for a jury, however, is the witnesses' credibility, and the ultimate determination of guilt or innocence after a fair trial is to be made by the jurors. Given the evidence, we cannot say that no reasonable juror could find Jones guilty based on the presented evidence.

 The evidence was also sufficient to support the element of premeditation, although the question is also quite close. Under Washington law, "[p]remeditation is the mental process of thinking before hand, deliberation, reflection, weighing or reasoning for a period of time, however short." *State v. Rehak*, 67 Wash. App. 157, 834 P.2d 651, 655 (1992). However, the mere fact that the stabbing must have taken at least some period of time is not itself enough to support an inference of premeditation. *See State v. Bingham*, 105 Wash.2d 820, 719 P.2d 109, 113 (1986). Premeditation may be shown by circumstantial evidence if the inferences drawn by the jury are reasonable and the evidence supporting the jury's verdict is substantial. *See id.* at 111–12. To infer premeditation the Washington courts have looked for evidence relating to four factors: motive, the planned procurement of a weapon, stealth, and the method of killing. *See State v. Pirtle*, 127 Wash.2d 628,

904 P.2d 245, 255 (1995). The testimony was consistent that no one in the Jones household had seen the fishing knife prior to the murder. Further, a reasonable inference may be drawn that a fish filet knife would not ordinarily be found in a bathroom. From these facts a reasonable juror could conclude that the crime involved a planned procurement of a weapon.

In sum, the district court did not err in holding that there was sufficient evidence to support the verdict.

## IV

 As T.S. Eliot observed: "Between the idea and the reality, between the motion and the act, falls the shadow." [6] No one but the architect of this tragedy knows with absolute certainty who killed Lee Jones. Jerry Jones has tendered a credible theory, based on admissible evidence, that someone else took her life. He has also shown that his attorney failed to investigate this theory before the murder trial. Thus, his original conviction cannot stand. However, because the evidence presented by the prosecution was sufficient to sustain his original conviction when viewed in the light most favorable to the state, the state is not precluded from retrying Jones should it choose to do so.

We affirm the district court's judgment in its entirety.

**6.** *The Hollow Men* (1925) (punctuation and capitalization altered).