Rocky Dean LABOA, Petitioner–Appellant,

v.

Arthur CALDERON, Warden, Respondent–Appellee.

No. 99–15816.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 2000

Filed Sept. 11, 2000

Eric S. Multhaup and Tara M. Mulay, Mill Valley, CA, for appellant.

Ward A. Campbell, Deputy Attorney General, Sacramento, CA, for appellee.

Before: HUG, Chief Judge, D.W. NELSON, and McKEOWN, Circuit Judges.

HUG, Chief Judge:

Petitioner Rocky Dean Laboa appeals the district court's denial on the merits of his petition for a writ of habeas corpus. On March 26, 1982 Laboa was convicted of first degree murder and robbery. The jury found special circumstances to exist, and on May 3, 1982, Laboa was sentenced to prison for life without the possibility of parole. On direct appeal the California Court of Appeals affirmed the conviction, but struck the special circumstance. La-

boa's sentence was reduced to 25 years to life.

After exhausting his state law remedies, Laboa filed this petition, alleging six constitutional violations. The district court denied the petition on October 20, 1998. Laboa now appeals that decision and argues that, during his trial, he was deprived of due process, of his right to confront witnesses against him, and of his right to effective assistance of counsel. Even if Laboa's trial was infected with constitutional error, however, the error was harmless and did not prejudice Laboa. We therefore affirm.

## FACTS

On November 23, 1980, Laboa and three other individuals, Michael Denney, Danny Carl and Michelle Keener, discussed a sale of guns to the eventual victim, Juan Morones. During this discussion Laboa and the others developed a plan to rob Morones.

That night, Laboa, Denney, Carl and Keener drove to Morones's house in Keener's car, the license plates of which had been removed. While en route, Keener apparently told Carl to tell the others not to rob Morones, but Carl never complied.

When the group arrived at Morones's house, the men waited outside while Keener engaged in an act of prostitution with Morones. Shortly thereafter, while Morones was still nude, Laboa, Denney and Carl entered the house. Denney was carrying a .357 caliber revolver. The men also had a shotgun and a rifle. Denney and Carl ordered Morones to lie down on the bathroom floor. Meanwhile, Laboa and Keener searched for the victim's money in Morones's bedroom. As Laboa and Keener were gathering plastic bags that contained the victim's money, they heard a single shot from the bathroom. Carl yelled that Denney had shot Morones, and the four immediately fled from the house.

As they were driving away from the house, Denney said the shooting was an accident. The four eventually stopped alongside a wheatfield, where they re-placed the license plates on the car and buried the handgun. A short time later, at a gas station, they divided the proceeds of their robbery (twenty dollars) among the four of them. Finally, before returning home, they threw the rifle and shotgun into some bushes alongside a road.

Several months later Keener confessed to two police officers and gave them a taped statement. In exchange for immunity, Keener testified at the preliminary hearing and helped the police locate the handgun that Denney had used to shoot Morones.

Laboa, Denney and Carl were arrested. As Laboa and Denney were being transported in a police van, a conversation they had with each other was surreptitiously recorded by the police. The tape contained statements indicating hopelessness in the face of strong evidence against the two, as well as some discussion about how they could beat the charges against them.

On April 15, 1981, during the course of investigation, the police interviewed Denney. During this interview Denney implicated Laboa and the others in the robbery and shooting, but he confessed that he was the one who shot Morones. Denney was tried and convicted of first degree murder, but the California Court of Appeals later found that his confession was involuntary and that his conviction should therefore be reversed. *See People v. Denney,* 152 Cal. App.3d 530, 199 Cal.Rptr. 623 (1984). According to the California court, the police had improperly continued the interview after Denney requested an attorney, and had improperly implied that the State would be lenient if Denney confessed, but that it would seek the death penalty if he did not confess.

At Laboa's trial, which was before the California Court of Appeals found that Denney's confession was involuntary, the prosecution introduced redacted portions of Denney's confession in order to implicate Denney in the robbery and murder. The portions of the confession were introduced via testimony from a police officer

who took the confession. The admitted portions made no mention of Laboa, and the only suggestion that anyone other than Keener and Denney was involved in the incident was a statement that three guns were used in the robbery (although the statement did not say who carried the guns). Laboa's attorney objected to the redacted confession on hearsay grounds, but it was admitted as a statement against Denney's interest. Denney himself did not testify at Laboa's trial because he asserted his right against self-incrimination. In addition to Denney's redacted confession, the prosecution introduced the tape-recorded van conversation between Denney and Laboa. Keener also testified at Laboa's trial for the prosecution.

Laboa offered a diminished capacity defense and testified that on the night of the robbery and murder he had been using both heroin and alcohol. He also testified that he thought that he and the others were going to sell guns to the victim, not rob him.

The jury found Laboa guilty of first degree murder and robbery. The judgment of conviction was entered on May 3, 1982.

Laboa filed his federal habeas petition on December 22, 1994. The district court had jurisdiction pursuant to 28 U.S.C. § 2254, and it entered an order denying the petition on October 20, 1998. On November 3, 1998 Laboa filed a motion to Alter and Amend the Memorandum and Order pursuant to Federal Rule of Civil Procedure 59(e). The district court denied that motion on February 19, 1999 and issued a Certificate of Probable Cause for Appeal on that date. Laboa filed a timely Notice of Appeal on March 9, 1999.

The Supreme Court recently decided that the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") regarding the issuance of a Certificate of Appealability ("COA") as a predicate to review in the court of appeals apply to all cases in which the Notice of Appeal was filed after AEDPA's effective date, April 24, 1996. *See Slack v. McDaniel,*

—— U.S. ——, 120 S.Ct. 1595, 1603, 146 L.Ed.2d 542 (2000). Laboa's appeal falls within this category of cases. Consistent with *Slack,* we treat Laboa's Notice of Appeal in this case as an application for a COA. *See id.; Schell v. Witek,* 218 F.3d 1017, 1021 n. 4 (9th Cir.2000) (en banc). We conclude that Laboa has made the requisite "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and we therefore grant the COA and exercise jurisdiction over these issues pursuant to 28 U.S.C. § 2253 and Rule 22 of the Federal Rules of Appellate Procedure.

## DISCUSSION

■ We review de novo a district court's denial of a petition for a writ of habeas corpus. *See Allen v. Crabtree,* 153 F.3d 1030, 1032 (9th Cir.1998).

### A. Whether the Admission of Denney's Confession Is Reversible Error.

Laboa asserts that the introduction of the redacted portions of Denney's confession violated his rights under the Due Process Clause and the Confrontation Clause because, he claims, Denney's confession was involuntary, hearsay, and untrustworthy. We need not, however, decide whether the admission of Denney's confession at Laboa's trial was constitutional error, because even assuming that it was error, it was harmless.

■ Erroneous admission of a non-testifying co-defendant's out of court statement is a trial-type error subject to harmless error analysis. *See Arizona v. Fulminante,* 499 U.S. 279, 306–307, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Brown v. United States,* 411 U.S. 223, 231–32, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). Laboa briefly argues that the proper harmless error analysis to apply to his case is the "harmless beyond a reasonable doubt" test established by *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Laboa acknowledges that in federal habeas proceedings the usual harmless

error standard is that of *Brecht v. Abrahamson*, 507 U.S. 619, 637–38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), but argues that when a state court has not performed a *Chapman* harmless error analysis, the federal habeas court should apply the *Chapman* standard. We have recently disposed of this argument. In *Bains v. Cambra*, 204 F.3d 964, 977 (9th Cir.2000), a panel of this Court held that the *Brecht* standard applies to all § 2254 cases, regardless of the type of harmless error review conducted by the state courts. We therefore reject Laboa's invitation to perform a *Chapman* analysis.

 Under the *Brecht* harmless error analysis, Laboa's alleged constitutional errors warrant a grant of the habeas petition only if "in light of the record as a whole," the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (internal quotation marks omitted). Thus, Laboa is not entitled to habeas relief unless he can establish that the error "resulted in 'actual prejudice.' " *Brecht*, 507 U.S. at 637, 113 S.Ct. 1710.

 The admission of Denney's confession did not have a substantial and injurious effect on the jury's verdict. The critical evidence in this case was supplied by Keener's testimony and the tape recording of Laboa's and Denney's conversation in the police van. Keener's testimony described each specific detail of the crime: that Laboa was present during the initial planning of the robbery, when they had all four agreed to the robbery; that he traveled with the others to the victim's house and waited outside while Keener engaged in intercourse with the victim; that he entered the house with Denney and Carl; that he was helping Keener search for the victim's money in the bedroom when Denney and Carl were tying the victim up in the bathroom, and when Denney actually shot the victim; that he fled with the rest of his accomplices immediately after the murder; and that he helped to dispose of the evidence and to divide the proceeds of the robbery. In short, Keener's testimony provided evidence for the jury to conclude that Laboa knowingly participated in an armed robbery in which the victim was shot and killed.

The tape recording of Laboa's and Denney's conversation in the police van was equally important to the prosecution's case. In his closing arguments the prosecuting attorney referred to the tape as "really what the prosecution is resting its case on." Similarly, the defense attorney also emphasized the importance of the van tape, and in his closing argued that "if the van tape weren't here I suspect Rocky Laboa would not be sitting at this table." The tape contained several statements indicating that Laboa believed that he would be found guilty.[1] Laboa also made statements on the tape describing his activities in the robbery, of which Denney was unaware.[2] And perhaps most importantly, the tape contained statements that disclosed Laboa's specific intent to rob the victim, not just sell him guns, which countered Laboa's defense that he did not know that a robbery was going to take place.[3] Accordingly, Laboa's own tape-recorded words not only added to the prosecution's evidence, but also undermined his lack-of-intent defense.

---

1. The van tape revealed that Laboa made the following statements: "We're gone, Holmes, we're gone with the wind buddy...."; "They got us dead and gone...."; "I'm just as guilty as you are."

2. Laboa: "[The police] knew about where we threw beer bottles out, the gas station where I threw the [expletive] bank book in the trash. How did they know about that?" Denney: "I didn't even know about that."

3. Laboa told Denney to argue that the rope they brought to tie the victim up indicates that they intended merely to rob the victim, not murder him: Denney: "I'll tell'em, you know, I shot him and it was an accident. You just got to back my play. Say 'Hey man, nobody said anything about shooting anybody.' " Laboa: "Hey, well, all you gotta say was, '*Hell, we had the [expletive] thing to tie him up*,' you know, they know we had that." (emphasis added).

By contrast, the redacted portions of Denney's confession admitted at trial added nothing to the evidence against Laboa. The prosecution presented Denney's confession through the testimony of the police officer who took it. The confession described the robbery and murder, and the only considerable differences between the confession and Keener's testimony were that the redacted confession did not mention Laboa or recount his participation in the incident, and that it described in more detail how Denney shot the victim.[4] Neither the prosecution nor the defense commented at length on the confession. The prosecution devoted nine lines out of its 25-page closing argument to the confession, and did not comment on it at all during its 10-page rebuttal argument. The defense also did not comment on the confession during closing argument. Given that the redacted confession essentially duplicated other evidence, that it never mentioned Laboa, and that neither party focused on the confession, the confession could not have had a substantial and injurious effect on the jury's verdict.

Petitioner argues that Denney's confession actually did implicate Laboa insofar as Denney's statement suggested "there was a shotgun and a .22 rifle also used." According to Petitioner, the jury could have inferred from this statement that Petitioner was carrying one of the guns to which the redacted confession referred, which would have contradicted his defense. This statement, however, is neutral on its face, and placed in the context of the evidence as a whole, did not have a substantial and injurious effect on Laboa's trial. First, the redacted statement did not clarify who was carrying the guns, nor did it state that anyone other than Denney and Keener was involved in the incident. It is not likely that the jury would have inferred from the redacted confession that someone who was not even mentioned in the confession was carrying one of the guns. Second, even placing this statement in the context of the prosecution's other evidence does not implicate Laboa. Keener testified that although she knew that Laboa entered the trailer and helped her search for and take the victim's money, she did not recall seeing Laboa with a gun at any time during the incident. Keener's testimony thus further reduces the possibility that the jury inferred that Laboa had carried one of the guns to which the redacted confession referred. Third, and perhaps most importantly, even if the jury inferred

---

4. The redacted portions of the confession admitted through the police officer's testimony are as follows:

> [Denney] advised on the night of the homicide earlier in the evening he responded to Michelle Keener's residence where there had been a conversation regarding a robbery of a wetback or Mexican male subject in a trailer in a desolate area near Kettleman City—I mean out near the Kettleman City–Devils Den area. He advised that they then, Michelle, he, then went to that location, which he described as being near the intersection of Twissleman Road and Highway 33, then Michelle Keener had entered the residence to commit an act of prostitution with the subject that was inside. That after waiting outside for a short time, Michael Denney had entered the residence armed with a Colt .357 Magnum handgun which he indicated he held out in front of him. He advised when he entered the residence he had observed a nude Mexican male standing, which Michael later said was in the doorway of the bedroom, bed-

> room of the trailer. He indicated that he told the Mexican male subject to back up while pointing a handgun at him. He eventually had the Mexican male subject enter a bathroom in the trailer and lay down on the floor in the bathroom.

> . . . . .

> [While the victim was in the bathroom, Denney] said that he placed the weapon to the victim's head and while the victim was being further subdued the weapon had accidentally discharged. He looked down, he saw a hole in the cheek area of the victim's face, that the victim hadn't moved. That he then became very excited and that they then left the trailer or the residence hurriedly and had then returned to Michelle's vehicle that was parked outside, and drove from the area in her vehicle.

The redacted portions of the confession also described the handgun and stated that it had been buried after the incident. Again, this portion of the redacted confession made no mention of Laboa.

from Denney's statement that Laboa was carrying one of the three guns, such an inference is completely consistent with Laboa's defense that he thought they were going to sell guns to the victim, not to rob him. Therefore, any inference that the jury might have drawn from Denney's statement was harmless.

Petitioner also argues that without Denney's confession, Keener's testimony would not have been corroborated. Without this corroboration, petitioner argues, Keener's testimony would not have been admitted because California law requires that accomplice testimony be corroborated in order to be admissible at trial. Therefore, the argument goes, the "actual prejudice" caused by the admission of Denney's redacted confession was the admission of Keener's testimony, because without Keener's testimony the conviction could not stand.

California Penal Code section 1111 provides that a "conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense." Cal.Penal Code § 1111. Contrary to petitioner's argument, however, section 1111 "does not render uncorroborated accomplice testimony inadmissible." *In re Mitchell P.,* 22 Cal.3d 946, 151 Cal.Rptr. 330, 587 P.2d 1144, 1147 n. 2 (1978); *see also People v. Bowley,* 59 Cal.2d 855, 31 Cal.Rptr. 471, 382 P.2d 591, 593 (1963) ("The fact that a witness is an accomplice does not affect the admissibility or competency of his testimony; it goes only to its weight and credibility."); *In re R.C.,* 39 Cal.App.3d 887, 114 Cal.Rptr. 735, 738 (1974); *People v. Santos,* 134 Cal.App. 736, 26 P.2d 522, 526 (1933). Rather, section 1111 is a state law requirement that a conviction be based on more than uncorroborated accomplice testimony. We therefore reject the attempt to characterize the admission of Keener's testimony as the "actual prejudice" that Laboa suffered from Denney's redacted confession, because the testimony would have been admitted even if it were uncorroborated.[5]

Section 1111 does, however, prevent convictions based on only uncorroborated accomplice testimony. As a state statutory rule, and to the extent that the uncorroborated testimony is not "incredible or insubstantial on its face," the rule is not required by the Constitution or federal law. *United States v. Necoechea,* 986 F.2d 1273, 1282 (9th Cir.1993) ("The uncorroborated testimony of an accomplice is enough to sustain a conviction unless it is incredible or insubstantial on its face."); *United States v. Lai,* 944 F.2d 1434, 1440 (9th Cir.1991); *United States v. Lopez,* 803 F.2d 969, 973 (9th Cir.1986); *Harrington v. Nix,* 983 F.2d 872, 874 (8th Cir.1993) ("[S]tate laws requiring corroboration do not implicate constitutional concerns that can be addressed on habeas review."). Because Keener's testimony was neither incredible nor insubstantial on its face, and because section 1111 is a state rule, habeas will lie for Laboa only if the alleged violation of section 1111 denied Laboa his due process right to fundamental fairness. *See Estelle v. McGuire,* 502 U.S. 62, 72–73, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

A State violates a criminal defendant's due process right to fundamental fairness if it arbitrarily deprives the defendant of a state law entitlement. *See Hicks v. Oklahoma,* 447 U.S. 343, 346, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980). No such arbitrary denial occurred here. The corroborative evidence required by section 1111 "need not corroborate every fact to which the accomplice testified or establish the corpus delicti, but is sufficient if it tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth." *People v. Fauber,* 2 Cal.4th 792, 9 Cal. Rptr.2d 24, 831 P.2d 249, 273 (1992). The van tape meets this standard.

---

**5.** Moreover, even if uncorroborated accomplice testimony were inadmissible under the California rule, Keener's testimony still would have been properly admitted because, as we discuss below, the van tape more than adequately corroborated her testimony.

At one portion of the tape Laboa tells Denney that he is going to testify to the following:

> [Denney went] in the house and I stayed outside and waited a minute to make sure no one was coming. When I went in, when I went in, you guys, I don't know where you were. I went to, uh, I was walking down the hall and I seen Michelle in the bedroom. I turned in the bedroom and started, uh, she was getting dressed and I looked around for some money and she handed me a thing with money.... It wasn't hardly no money. And the gun went off, I heard a gun go off and I just said, "[Expletive], let's get the [expletive] out of here." And I ran out and that's all I know. I, I didn't have a gun. OK? ... You know what I'm saying, I didn't see the dude.... I didn't see you in there.

Although this statement contradicts Keener's testimony that Laboa entered the trailer with the others, it corroborates Keener's testimony that Laboa was helping her look for the victim's money, that the money they found was a small amount, that both Laboa and Keener were in the bedroom when the gun was fired, and that Laboa did not see Denney shoot the victim. At another point on the van tape Laboa complains that "[the police] knew about where we threw the beer bottles out, the gas station there where I threw the [expletive] bank book in the trash." This statement corroborates Keener's testimony that Laboa threw away the victim's bank book and immigration cards at a gas station where Laboa and the others stopped after the shooting. And at yet another point on the tape Laboa advises Denney to point to the rope that they took with them into the victim's trailer to indicate that they did not intend to kill the victim. This important statement corroborates Keener's testimony that they intended to rob the victim, not just sell him guns. In short, the statements from the van tape corroborate many of the facts established by Keener's testimony, and Laboa's conviction therefore does not run afoul of section 1111's prohibition on convictions based solely on uncorroborated accomplice testimony. *See Fauber*, 9 Cal.Rptr.2d 24, 831 P.2d at 273. California thus did not arbitrarily deny Laboa of a state-created entitlement, and Laboa is not entitled to habeas relief on that basis.

Assuming that the admission of Denney's confession was error, it did not have a substantial and injurious effect on the jury's verdict. The alleged error was therefore harmless. *See Brecht*, 507 U.S. at 638, 113 S.Ct. 1710; *Bains v. Cambra*, 204 F.3d 964, 977 (9th Cir.2000).

### B. *Whether Laboa Was Denied Effective Assistance of Counsel.*

▮▮▮ Laboa claims that he was denied effective assistance of counsel because his attorney failed to make a motion to suppress Denney's confession on Laboa's behalf.[6] Ineffective assistance of counsel claims involve a two-part inquiry. First, the defendant must show that counsel "made errors so serious that counsel

---

**6.** The dissent argues that this Court should grant the petition on the basis that Laboa's counsel was ineffective for failing to object to the admission of the van tape. However, "we will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief." *International Union of Bricklayers Local No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir. 1985); *Jones v. Wood*, 207 F.3d 557, 562 n. 2 (9th Cir.2000); *Poland v. Stewart*, 169 F.3d 573, 584 n. 6 (9th Cir.1999). As the dissent points out, there are exceptions to this general rule, most notably the "manifest injustice" and the "no-prejudice to the opposing party" exceptions. *See United States v. Ullah*, 976

F.2d 509, 514 (9th Cir.1992). We believe that the general rule is well-applied in this situation.

Laboa's references to this claim consist of seven words in the table of contents and in an argument heading in Laboa's opening brief. These references claim that Laboa's counsel was ineffective because he, *inter alia*, failed "to move to suppress the van tape." Beyond these cryptic references, Laboa provides absolutely no argument in support of the claim.

Taken at face value, these references are incorrect because Laboa's trial counsel did in fact move to suppress the van tape, and therefore even to the extent that Laboa's briefs do

was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Campbell v. Wood,* 18 F.3d 662, 673 (9th Cir.1994) (en banc) (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)) (internal quotation marks omitted). Second, the defendant must show that "the deficient performance prejudiced the defense." *Id.* (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052) (internal quotation marks omitted).

 We need not evaluate whether the failure of Laboa's counsel to make a motion to suppress Denney's confession fell below an objective standard of reasonableness because even if it did, such inadequate performance would not have been prejudicial. To demonstrate prejudice, the defendant has the burden of proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. As we discussed above, the key evidence in this case was Keener's testimony and the van tape. Those pieces of evidence both established the facts against Laboa, and discounted his asserted lack-of-intent defense. Denney's confession added nothing to this evidence against Laboa. Therefore, even if Laboa's counsel had successfully suppressed Denney's confession, the probability that the result would have been different is far from reasonable. Accordingly, there was no prejudicial denial of effective assistance of counsel, and Laboa is not entitled to a writ of habeas corpus on that basis. *See Strickland,* 466 U.S. at 691, 104 S.Ct. 2052.[7]

### CONCLUSION

Even if the admission of Denney's confession in evidence was constitutional error, the error was harmless. Moreover, even if the confession had been sup-

---

raise an ineffective assistance claim based on the van tape, that claim is belied by the facts. Looking beyond these passing references to the issues Laboa raised before the magistrate and district judges, we might surmise that Laboa really means that his trial counsel was ineffective for failing to object to the van tape on other grounds. We, however, do not see the "manifest injustice" in refusing to look to Laboa's arguments before the lower courts to determine which arguments he intended to make (but did not) in this Court. Nor do we see how wholly crafting an argument on Laboa's behalf could be anything but prejudicial to the Warden. We therefore respectfully decline the dissent's invitation to grant the habeas petition based upon an argument that Laboa did not even make.

7. The dissent argues that Laboa is entitled to a remand for an evidentiary hearing because the district court applied the rule of *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), in evaluating the prejudice prong of Laboa's ineffective assistance of counsel claim. As the dissent aptly points out, the Supreme Court recently explained that *Strickland*'s outcome-determinative standard is the proper prejudice standard in most ineffective assistance of counsel claims, notwithstanding language suggesting otherwise in *Fretwell. See Williams v. Taylor,* —— U.S. ——, ——–——, 120 S.Ct. 1495, 1512–13, 146 L.Ed.2d 389 (2000). The dissent, howev-

er, is incorrect in arguing that the district court's error justifies an evidentiary hearing.

Under pre-AEDPA law, which we apply in reviewing the district court's ruling on the merits of Laboa's habeas petition, *see Slack v. McDaniel,* —— U.S. ——, ——, 120 S.Ct. 1595, 1602, 146 L.Ed.2d 542 (2000); *Lindh v. Murphy,* 521 U.S. 320, 326, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), Laboa is entitled to an evidentiary hearing only if: 1) he alleged facts that, if proven, would entitle him to habeas relief; and 2) he did not receive a full and fair opportunity to develop those facts in a state court, *see Rich v. Calderon,* 170 F.3d 1236, 1239 (9th Cir.1999). As we stated above, the failure of Laboa's counsel to move to suppress Denney's confession did not prejudice Laboa under *Strickland*'s outcome-determinative standard. The district court's erroneous reasoning neither changes that conclusion, nor allows this Court to overturn Laboa's state court conviction. 28 U.S.C. § 2254(d)(1). Because the facts that Laboa alleged would not entitle him to a writ of habeas corpus, he is not entitled to an evidentiary hearing. *See Marino v. Vasquez,* 812 F.2d 499, 508 (9th Cir.1987) ("This court may affirm the district court on any ground finding support in the record, even if the district court relied on the wrong grounds or the wrong reasoning." (citation omitted)); *Welch v. Fritz,* 909 F.2d 1330, 1331 (9th Cir.1990); *United States v. Greene,* 783 F.2d 1364, 1368 (9th Cir.1986).

pressed, the result of the proceeding would have been no different. The district court properly denied Laboa's petition for a writ of habeas corpus.

AFFIRMED.

D.W. NELSON, dissenting:

The district court relied on the wrong prejudice standard in reviewing Laboa's ineffective assistance of counsel claim in direct contravention of the Supreme Court's recent holding in *Williams v. Taylor*, — U.S. —, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). I would remand this case to the district court for an evidentiary hearing because Laboa is entitled to full and fair review of his ineffectiveness claims. I respectfully dissent.

## I. Ineffective Assistance

The district court used the wrong prejudice standard in rejecting Laboa's ineffective assistance of counsel claims. Proof of ineffective assistance of counsel requires a two-prong showing of (1) deficient performance; and (2) prejudice. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The critical determination is often prejudice—whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

In *Williams v. Taylor*, the Supreme Court reaffirmed that the prejudice standard only consists of the outcome-determinative test in *Strickland*. "The Virginia Supreme Court erred in holding that our decision in *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), modified or in some way supplanted the rule set down in *Strickland*." *Williams*, 120 S.Ct. at 1512. In Terry Williams's case,[1] the Virginia Supreme Court relied on *Fretwell* in order to find that the prejudice prong was not satisfied based " 'on mere outcome determination,' " but also required a showing that the result was

fundamentally unfair. *Id.* at 1501 (citations omitted). The Court held that *Strickland*'s outcome-determinative standard is the only requirement for proving prejudice. *See id.* at 1515 ("[T]he State Supreme Court mischaracterized at best the appropriate rule, made clear by this Court in *Strickland*, for determining whether counsel's assistance was effective within the meaning of the Constitution .... inasmuch as the Virginia Supreme Court relied on the inapplicable exception recognized in *Lockhart*. ...").

In ruling on Laboa's ineffectiveness claim, the district court improperly relied on *Fretwell*'s prejudice standard. According to the district court, *Strickland*'s outcome determinative standard was insufficient to establish prejudice: "Petitioner cannot satisfy the *Strickland* standard absent a showing that the proceeding was fundamentally unfair or unreliable." The district court's discussion of *Fretwell*'s factual and procedural background and *Fretwell*'s "fundamental fairness" requirement spanned over three pages. Based on the failure to satisfy *Fretwell*, the district court concluded: "In this case, Petitioner received a fair trial.... Petitioner has not shown that counsel's errors prejudiced him within the meaning of *Strickland*." The district court's "meaning of *Strickland*," however, included the additional "fundamental fairness" requirement found in *Fretwell*.

Before the district court improperly relied on *Fretwell*, Laboa raised his ineffectiveness claims with regard to Denney's confession and the van tape with the magistrate court. U.S. Magistrate Judge Dennis Beck, in his 49-page unpublished opinion, pointed out that the California Court of Appeals not only had suppressed Denney's statements as a coerced confession but also it had suppressed the van tape under the "fruit of the poisonous tree" doctrine.[2] Judge Beck recommended an evidentiary hearing in order to determine

---

**1.** The Supreme Court decided two cases named *Williams v. Taylor* on the same day.

**2.** Judge Beck wrote:

In finding that Denney's damaging statements recorded in the van tape should have been suppressed as the product of his earlier

whether the van tape should have been suppressed. But since Judge Beck recommended habeas relief based solely on the suppression of Denney's coerced confession, he said an evidentiary hearing regarding ineffective assistance was "not needed." Judge Beck made a similar finding with regard to Laboa's ineffectiveness claim about the van tape.[3] Although he did not hold an evidentiary hearing, Judge Beck determined that Laboa's ineffectiveness claim with regard to Denney's confession "has merit."

In a 45–page unpublished opinion, the district court rejected Laboa's habeas claims. Disregarding Judge Beck's recommendation, the district court decided not to suppress the van tape without holding an evidentiary hearing. The district court also rejected Laboa's ineffectiveness claims without an evidentiary hearing. The district court conceded that Laboa had satisfied the performance prong because there was "no tactical reason" for failing to join Denney's suppression motion. The district court, however, denied that his lawyer's failure to object to Denney confession and the van tape prejudiced Laboa under *Fretwell.*

## II. *Habeas Relief*

Because Laboa's petition was filed in the district court before the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we review Laboa's claims of ineffective assistance of counsel, a mixed question of law and fact, *de novo.*[4] *See Johnson v. Baldwin,* 114 F.3d 835, 838 (9th Cir.1997).

The only question in this case is whether Laboa was sufficiently prejudiced under *Strickland.* If Laboa's attorney had joined Denney's motion to suppress Denney's confession and he had filed a proper motion to suppress the van tape, there is more than a "reasonable probability" that the outcome of Laboa's trial would have been different. Without these two pieces of evidence, the government had no case.

The California Court of Appeals suppressed Denney's confession as coerced and apparently found evidence that Denney's comments on the van tape were the "fruit" of his coerced confession. Indeed, Laboa's responses on the van tape reflect the California court's concerns that the van tape was a product of prior intimidation and coercion.[5] The van tape re-

---

involuntary confession, the Court of Appeals remanded the case to the trial court to conduct a hearing at which the state was to be given the opportunity to present evidence of a break in the causative chain between the involuntary confession and statements made in the van. In making the finding, the Court of Appeal noted that "[Denney's] statement to [petitioner] to 'be as cooperative as possible' [was] some evidence of the influence of the prior confession." *People v. Denney,* No. F004763, page 5.

3. Judge Beck wrote: "This court cannot make this determination because it unable to determine the merits of this issue. (See discussion above under 'Van Tape') Accordingly, because the court recommends granting the petition, the court does not need to reach this issue."

4. Our pre-AEDPA *de novo* standard of review is another reason why the majority should have found that Laboa was prejudiced by his counsel's failure to object to Denney's confession and the van tape. We are not hamstrung by AEDPA's strict "unreasonable application" test for ineffectiveness cases. *See Weighall v. Middle,* 215 F.3d 1058, 1062 (9th Cir.2000).

Indeed, we do not have to find clear error, as in our post-AEDPA cases. *See Van Tran v. Lindsey,* 212 F.3d 1143, 1152–54 (9th Cir. 2000) (holding after *Williams* that in order for a state court's application of federal law to be unreasonable, it must have been clearly erroneous.). We merely have to find error. The state appeals court erred in this case because, if the proper suppression motions had been filed, there is a reasonable probability that the outcome of Laboa's case would have been different.

5. Laboa: They told me they was gonna see me gassed. So they want me bad huh.

　　　　\*　　\*　　\*

Laboa: They said, "If you don't fuckin' cop out now, we're going to push, you, you're gonna die motherfucker." Hey, I'm delirious man. I swear to God.

　　　　\*　　\*　　\*

Laboa: They told me, they said, "We're gonna make it look like that wetback had his hands like this, beggin' and you guys blew him away." Just like man, sayin',

flects Denney and Laboa's belief that if they did not cooperate they would face the death penalty and that cooperating was in their best interest. The forced cooperation in the van, just as in Denney's confession, was a product of police coercion.

The outcome of Laboa's state appeal would have been different if his counsel had properly objected to Denney's confession and the van tape. At the very least, whether the van tape would have been excluded as it related to Laboa is a mixed question of law and fact that requires an evidentiary hearing.

Despite our *de novo* review, I am uncomfortable resolving all of these issues without an evidentiary hearing on ineffectiveness.[6] This would give the district court an opportunity to apply the proper prejudice standard. It also would give Laboa a full and fair review of his ineffectiveness claims. Federal district court is often the first (and usually the best) opportunity for a petitioner to gain a complete review of his ineffectiveness claims. The majority's decision deprives Laboa of that opportunity. Now we can only wonder what the district court, applying the correct prejudice standard, would have decided.

### III. *Waiver Issues*

The only explanation for the majority opinion's relative silence about the district court's incorrect prejudice standard is that the majority believed: (1) the error was harmless; or (2) Laboa waived his ineffectiveness with regard to the van tape. The error, however, is not harmless because the admission of the van tape and Denney's confession "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (internal quotation marks omitted). *See also Bains v. Cambra,* 204 F.3d 964, 977–78 (9th Cir.2000) (holding that the *Brecht* standard applies to habeas review of state court decisions). Laboa's ineffectiveness claim relates to both Denney's confession and to the van tape. Without those two pieces of evidence, the government had no case against Laboa. Therefore, the error "resulted in 'actual prejudice.'" *Brecht,* 507 U.S. at 637, 113 S.Ct. 1710 (citations omitted). Harmless error would be a closer question if the majority found that Laboa had waived his ineffectiveness claim as it related to the van tape because the van tape is more probative of Laboa's guilt than Denney's confession.

Laboa raised an ineffectiveness claim about the van tape before the magistrate court and the district court, both of which acknowledged the claim in their unpublished opinions. In his opening appellate brief, Laboa described his trial lawyer's ineffectiveness as encompassing the failure to move to suppress both Denney's confession and the van tape.[7] The header to Laboa's ineffectiveness claim characterized it as being based on "trial counsel's failures to join to Denney's motion to suppress his confession, *and to move to suppress the van tape.* ..." (emphasis added). This statement also is included in the table of contents of Laboa's opening and reply briefs. Although the body of Laboa's argument about ineffectiveness focuses exclusively on Denney's confession, finding a partial waiver of Laboa's ineffectiveness claim misreads Ninth Circuit caselaw.

"We're gonna make you look worse than Manson." Did they tell you shit like that?

**6.** I recognize that Laboa is entitled to an evidentiary hearing only if: 1) he alleged facts that, if proven, would entitle him to habeas relief; and 2) he did not receive a full and fair opportunity to develop those facts in a state court, *see Rich v. Calderon,* 170 F.3d 1236, 1239 (9th Cir.1999). I believe that Laboa is entitled to an evidentiary hearing for both reasons, and that an evidentiary hearing is a more prudent course than outright habeas relief.

**7.** Although Laboa's trial counsel may have objected to the van tape, he did not object to it as a "fruit" of Denney's coerced confession. He did not object to Denney's confession as involuntary (only on hearsay grounds), therefore he could not have objected to the van tape as a product of coercion.

As a general rule, "[w]e 'will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief.'" *United States v. Ullah,* 976 F.2d 509, 514 (9th Cir.1992) (quoting *Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 738 (9th Cir.1986)).[8] However, there are several notable exceptions to this rule, two of which apply to this case. We will review an issue not properly raised in an opening brief (1) "'if a failure to do so would result in a manifest injustice,'" *Ullah,* 976 F.2d at 514 (quoting *United States v. Loya,* 807 F.2d 1483, 1487 (9th Cir.1987)); or (2) "if the failure to raise the issue properly did not prejudice the defense of the opposing party." *Id.*

The manifest injustice exception applies to this case. First, the district court's erroneous reliance on the *Fretwell* test was "plain error," like basing a conviction on a non-unanimous verdict, and therefore reversal is "'necessary to prevent a miscarriage of justice.'" *Ullah,* 976 F.2d at 514 (quoting *United States v. Bustillo,* 789 F.2d 1364, 1367 (9th Cir.1986)). Second, it is a "'manifest injustice' to reverse the conviction of one co-defendant but to uphold the conviction of another co-defendant when the same error affected both defendants." *Id.* (citing *United States v. Olano,* 934 F.2d 1425, 1439 (9th Cir.1991), *rev'd on other grounds,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). *See also United States v. Molinaro,* 11 F.3d 853, 858 n. 9 (9th Cir.1993) (same); *United States v. Baker,* 999 F.2d 412, 416–17 (9th Cir.1993) (quoting *Ullah,* 976 F.2d at 514).

This case is the epitome of a manifest injustice involving a co-defendant. One of Laboa's co-defendants, Denney, moved to suppress his coerced confession, the confession was suppressed by the state court of appeals, and Denney's conviction was overturned. *See People v. Denney,* 152 Cal.App.3d 530, 199 Cal.Rptr. 623 (1984). Laboa's attorney, however, had failed to join Denney's motion to suppress or to file a motion to suppress the van tape. If Laboa's attorney had provided constitutionally effective assistance, Laboa's conviction should have been reversed by the state appeals court.

Furthermore, the manifest injustice exception applies because of the egregious application of the felony murder rule in this case. Three men and a woman went to a house presumably to sell guns and to allow the buyer to engage in an act of prostitution. Denney shot and killed the potential buyer while Laboa was in another room of the house. The four people stole a grand total of $20, of which Laboa received approximately $5. Although Denney admitted being the shooter, Denney's conviction was reversed because of his coerced confession. Laboa was convicted of felony murder based on partial confessions by two co-defendants (including Denney's) and the van tape. Laboa's sentence was eventually reduced to 25 to life. Given the harsh application of the felony murder rule and the constitutional ineffectiveness of Laboa's lawyer, finding a partial waiver would exacerbate a manifest justice.

Finally, Laboa's failure to raise his ineffectiveness claim properly with respect to the van tape did not prejudice the government in any way (nor does the majority opinion suggest any ways in which the government was prejudiced). *See Ullah,* 976 F.2d at 514 ("[W]e may review an issue if the failure to raise the issue properly did not prejudice the defense of the opposing party."); *International Union of Bricklayers v. Martin Jaska, Inc.,* 752 F.2d 1401, 1404 n. 4 (9th Cir.1985) (citing *Ellingson v. Burlington Northern, Inc.,*

---

8. Under this general rule, an issue mentioned in the "Statement of Issues," *see American Int'l Enters., Inc. v. F.D.I.C.,* 3 F.3d 1263, 1266 n. 5 (9th Cir.1993), in the "statement of the case," *see Martinez–Serrano v. I.N.S.,* 94 F.3d 1256, 1259–60 (9th Cir.1996), or in a footnote, *see International Olympic Comm. v.* San Francisco Arts & Athletics, 781 F.2d 733, 738 n. 1 (9th Cir.1986), but not discussed in the body of the brief or in the main argument, may be considered abandoned. The exceptions under the general rule, however, still apply to these cases, *see infra,* and I believe should apply in this case.

653 F.2d 1327, 1332 (9th Cir.1981)) ("We recognize that we have discretion in certain cases to consider improperly presented claims of error, where the appellee is not misled and the issue has been fully explored.").

The government was on notice about Laboa's ineffectiveness claim, and it presented a complete defense. By raising the ineffectiveness issue before the magistrate court, the district court, and in his opening brief, Laboa gave the government ample opportunity to mount a defense. As a general matter, Laboa properly raised an ineffectiveness claim in his opening brief. Although Laboa failed to argue ineffectiveness specifically in relation to the van tape, his opening brief's table of contents and header mentioned both the van tape and Denney's confession in describing his ineffectiveness claim.

Furthermore, even if Laboa had included a few lines of argument about the van tape in the body of the brief, it is likely that the government's defense to Laboa's ineffectiveness claim would have been unchanged. The government's defense can be summed up by the following sentence from its brief: "Since the district court properly concluded that such a motion was meritless, Laboa's claim of ineffective assistance also must fail. *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)." The government specifically relied on the district court's erroneous application of *Fretwell.* Assuming Laboa had included a few lines of argument about the van tape, this would not have ameliorated the constitutional violation or helped the government to construct a better defense. It is difficult to see how remanding for an evidentiary hearing on ineffectiveness will prejudice either party. Thus, given the lack of prejudice to the government and its reliance on *Fretwell* as a defense to ineffectiveness, there should no waiver regarding any portion of Laboa's ineffectiveness claims.

IV. *Conclusion*

The district court relied on the wrong prejudice standard in *Fretwell* in denying Laboa's ineffectiveness claim. Partial waiver is a non-issue given the manifest injustice exception regarding co-defendants and the lack of prejudice to the government. In the face of a clear constitutional violation and the harsh application of the felony murder rule, this case should be remanded to the district court for an evidentiary hearing. I respectfully dissent.