**Jacarnell DOTSON, Petitioner,**

v.

**SCRIBNER, Warden, Respondent.**

**No. EDCV 06–1389–PA (AGR).**

United States District Court,
C.D. California,
Western Division.

Oct. 10, 2008.

Jacarnell Dotson, Corcoran, CA, pro se.

Janelle M. Boustany, CAAG Office of Attorney General of California, San Diego, CA, for Respondent.

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

PERCY ANDERSON, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed the entire file *de novo*, including the Petition, the Magistrate Judge's Report and Recommendation, the Objections to the Report and Recommendation, and all records in the file. Having made a *de novo* determination, the Court agrees with the recommendation of the Magistrate Judge.

IT IS ORDERED that Judgment be entered denying the Petition and dismissed this action with prejudice.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

ALICIA G. ROSENBERG, United States Magistrate Judge.

The Court submits this Report and Recommendation to the Honorable Percy Anderson, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order No. 05–07 of the United States District Court for the Central District of Cali-

fornia. For the reasons set forth below, the Magistrate Judge recommends the Petition for Writ of Habeas Corpus be denied.

## I.

### *SUMMARY OF PROCEEDINGS*

On March 11, 2003, a San Bernardino County jury convicted Petitioner of petty theft, home invasion robbery, residential burglary, elder abuse, theft from elder, and the unlawful taking of a vehicle; the jury also found true that Petitioner used a firearm. (Lodged Document ("LD") 1 at 350–53, 390–91.) On April 4, 2003, Petitioner was sentenced to 20 years, 4 months in prison. (Petition at 1.) On June 15, 2004, 2004 WL 1336845, the California Court of Appeal affirmed the conviction. (LD 7.) On August 18, 2004, the California Supreme Court denied review without explanation. (LD 9.)

On September 23, 2005, Petitioner filed a petition for writ of habeas corpus in the Superior Court, which was denied on October 5, 2005. (LD 10, 11.) On November 4, 2005, Petitioner filed a petition for habeas relief in the California Court of Appeal, which was denied on November 14, 2005, without explanation. (LD 12, 13.) On December 19, 2005, Petitioner filed a petition for habeas relief in the California Supreme Court,[1] which was denied without explanation on September 13, 2006. (LD 14, 16.)

On December 14, 2006, Petitioner filed a Petition for Writ of Habeas Corpus by a Person in State Custody in this Court in which he raised three grounds: (1) Petitioner's due process rights were violated because of delayed disclosure of identifica-tion testimony by the government; (2) ineffective assistance of trial counsel for failing to object to hearsay testimony; and (3) ineffective assistance of appellate counsel related to Ground Two. On April 24, 2007, Respondent filed a motion to dismiss arguing that Grounds Two and Three were unexhausted. On May 29, 2007, the Court denied the motion to dismiss without prejudice. On June 26, 2007, Respondent filed an answer, admitting timeliness. (Answer at 2.) Petitioner filed a denial on October 19, 2007 and a traverse on January 17, 2008.

On February 7, 2008, Petitioner filed a Supplemental Brief to Add Exhausted Claim to Petition ("Supp. Petition") in which he raised a fourth ground, that the weapon enhancement violated his due process rights because the accomplice testimony lacked sufficient corroboration. On March 5, 2008, Respondent filed a supplemental answer ("Supp. Answer"). On April 29, 2008, Petitioner filed a supplemental reply ("Supp. Reply").

This matter has been taken under submission and is now ready for decision.

## II.

### *STATEMENT OF FACTS*

Below are the facts set forth in the California Court of Appeal decision on direct review. To the extent an evaluation of Petitioner's claims for relief depends on an examination of the record, the Court has made an independent evaluation of the record specific to Petitioner's claims for relief.

In July 2002, James Sims lived in a house in Apple Valley. Sims knew de-

---

**1.** Respondent also lodged a Supplemental Petition for Writ of Habeas Corpus that Petitioner signed on April 2, 2006, and submitted to the California Supreme Court in the same case as LD 14; it has no court stamp on it.

(LD 15.) The Court noted in its May 29, 2007, order that the California Supreme Court's docket shows that the court received this supplemental petition on April 10, 2006.

fendant because he rented a home to defendant's sister, Tammy Scott. Defendant once helped Sims repair a fence. Defendant also received his mail at Sims's house, and was at Sims's house about 10 days before the robbery.

On the afternoon of July 26, 2002, Sims awoke from a nap and found three young men "prowling" through his house. One of them "waived [sic]" a gun at him. Sims did not see the men's faces, because they were covered, and the men told Sims not to look at them. The men took Sims's car keys and some money out of a pair of his pants that were hanging in his bedroom.

One of them pushed Sims, and he fell back onto a couch. All three of the men then left the house through the back kitchen door. One of them drove Sims's Jeep Cherokee out of his garage.

Sims ran into his bedroom, obtained a gun, and went outside. He fired at the Jeep and at one person running north across a field near his property. Then he called the San Bernardino County Sheriff's Department. Deputy Shelton arrived within about five minutes of the call.

The items taken from Sims's house included a pillowcase, some $2 bills, some rolls of pennies with Sims's name and a former address on them, a satellite box and receiver, and a drill and its battery pack. A short time later, the Jeep was found abandoned in a dirt lot about two miles from Sims's house, just west of Mohawk Road near Navajo Road. Sims's pillowcase, drill, and satellite receiver were found in the Jeep.

One set of footprints led from the driver's side of the Jeep in a direct line to the residence of Leroy Lay, located on Navajo Road. Sims's car keys were found in a trash can outside the Lay residence. Two sets of footprints led

away from the Lay residence. Footprints were also found leading from the direction of Sims's house toward the Apple Valley Motel.

About a half hour after the robbery, six Black males found walking southbound on Navajo Road were detained and taken to an infield lineup. They included defendant, Benjamin Dupree, Daniel Ott, Christopher Farley, and Leroy Lay. At the lineup, Sims recognized defendant as Scott's brother, but said he could not have been one of the robbers. Sims identified Farley as one of the robbers, and was 60 to 70 percent sure that Lay was involved.

Muriel Ott, the mother of Dupree and Ott, drove up while the six males were being detained and consented to a search of her house, also located on Navajo Road. In the garage, deputies found jeans shorts, jeans long pants, a blue-collared button-up shirt with a loaded .22–caliber revolver in it, and a pair of shoes with a tread pattern similar to those found leading from Sims's car to the Lay residence. Coin rolls belonging to Sims were found in the jeans shorts and pants pockets, and $2 bills were found in the pants pockets.

Naquia Ott, then 10 or 11 years old, told the police during the search that the clothing found in the garage belonged to her brother, Ott. She testified that defendant was wearing the blue-collared shirt at Ott's house on the morning of the robbery, but wearing something else later that day.

On the day of the robbery, Liana Rodriguez was visiting at a house next door to Sims. Between 3:00 and 3:30 p.m., she saw four young men knock on Sims's front door, then go around to the back. She heard the sound of breaking glass. She then saw two young men come from the back of Sims's house and start walk-

ing away. A third ran toward the Apple Valley Motel. The garage door opened and the Jeep was driven away. She identified the blue-collared shirt as looking like one worn by one of the four young men.

Sims could not positively identify the .22–caliber revolver as the gun used in the robbery, but he said it looked like the same gun because it was the same color and size. He did not get a look at the gun that was used, but he believed it was an automatic. Ott was with defendant when defendant stole Erin Jones's purse the day before the Sims robbery. A cell phone that was in Jones's purse when defendant stole it, was in the jeans pants that were found in Ott's garage. (LD 7 at 3–6.)

## III.

### *STANDARD OF REVIEW*

A federal court may not grant a petition for writ of habeas corpus by a person in state custody with respect to any claim that was adjudicated on the merits in state court unless it (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Woodford v. Visciotti*, 537 U.S. 19, 21, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).

■ " '[C]learly established Federal law' ... is the governing legal principle or principles set forth by the Supreme Court at the time the state court rendered its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). A state court's decision is "con-

trary to" clearly established Federal law if (1) it applies a rule that contradicts governing Supreme Court law; or (2) it "confronts a set of facts ... materially indistinguishable" from a decision of the Supreme Court but reaches a different result. *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002). A state court's decision cannot be contrary to clearly established Federal law if there is a "lack of holdings from" the Supreme Court on a particular issue. *Carey v. Musladin*, 549 U.S. 70, 127 S.Ct. 649, 654, 166 L.Ed.2d 482 (2006).

■ Under the "unreasonable application prong" of section 2254(d)(1), a federal court may grant habeas relief "based on the application of a governing legal principle to a set of facts different from those of the case in which the principle was announced." *Lockyer*, 538 U.S. at 76, 123 S.Ct. 1166; *see also Woodford*, 537 U.S. at 24–26, 123 S.Ct. 357 (state court decision "involves an unreasonable application" of clearly established federal law if it identifies the correct governing Supreme Court law but unreasonably applies the law to the facts).

■ A state court's decision "involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle ... to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

■ "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (citation omitted). "The state court's application must have been 'objectively unreason-

able.'" *Id.* (citation omitted); *see also Clark v. Murphy,* 331 F.3d 1062, 1068 (9th Cir.), *cert. denied,* 540 U.S. 968, 124 S.Ct. 446, 157 L.Ed.2d 313 (2003).

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." *Miller–El v. Cockrell,* 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

▪ In applying these standards, this Court looks to the last reasoned State court decision. *Davis v. Grigas,* 443 F.3d 1155, 1158 (9th Cir.2006). To the extent no such reasoned opinion exists, as when a state court rejected a claim in an unreasoned order, this Court must conduct an independent review to determine whether the decisions were contrary to, or involved an unreasonable application of, "clearly established" Supreme Court precedent. *Delgado v. Lewis,* 223 F.3d 976, 982 (9th Cir.2000). If the state court declined to decide a federal constitutional claim on the merits, this Court must consider that claim under a *de novo* standard of review rather than the more deferential "independent review" of unexplained decisions on the merits authorized by *Delgado. Lewis v. Mayle,* 391 F.3d 989, 996 (9th Cir.2004) (standard of *de novo* review applicable to claim state court did not reach on the merits).

## IV.

### DISCUSSION

### A. GROUND ONE: *Delayed Discovery Disclosure*

▪ In *Brady v. Maryland,* 373 U.S. 83, 86, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court recognized a prosecutor's obligation to disclose exculpatory evidence, whether substantive or for impeachment purposes, when such evidence is "material" to the defense. To establish a *Brady* violation, a defendant must show that the evidence was favorable to him, either because it is exculpatory or because it is impeaching; the evidence must have been suppressed by the prosecution, willfully or inadvertently; and the defendant was prejudiced by the non-disclosure. *Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

▪ Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The fact that information might help the defense does not establish the materiality required for constitutionally-compelled discovery. *United States v. Agurs,* 427 U.S. 97, 109–110, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). "'The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" *Strickler,* 527 U.S. at 289–90, 119 S.Ct. 1936 (quoting *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)); *see also Silva v. Brown,* 416 F.3d 980, 986 (9th Cir.2005) ("a Brady violation is established where 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'") (quoting *Kyles,* 514 U.S. at 435, 115 S.Ct. 1555). Once the materiality of the suppressed evidence is established, no further harmless error

874

analysis is required. *Kyles*, 514 U.S. at 435–36, 115 S.Ct. 1555; *Silva*, 416 F.3d at 986.

 "*Brady* does not necessarily require that the prosecution turn over exculpatory material *before* trial. To escape the *Brady* sanction, disclosure 'must be made at a time when disclosure would be of value to the accused.'" *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir.1988) (emphasis in original) (quoting *United States v. Davenport*, 753 F.2d 1460, 1462 (9th Cir.1985)). "As long as ultimate disclosure is made before it is too late for the defendant[ ] to make use of any benefits of the evidence, Due Process is satisfied." *United States v. Scarborough*, 128 F.3d 1373, 1376 (10th Cir.1997) (quoting *United States v. Warhop*, 732 F.2d 775, 777 (10th Cir.1984)); *see also United States v. Anderson*, 391 F.3d 970, 975 (9th Cir.2004) (no *Brady* violation by government's delay in identifying two witnesses; defense secured the appearance of witnesses and had opportunity to recall other witnesses who could have been impeached); *United States v. Gamez–Orduno*, 235 F.3d 453, 461–62 (9th Cir.2000) (delayed disclosure cured by granting defense a continuance to prepare); *United States v. Alvarez*, 86 F.3d 901, 905 (9th Cir.1996) (no prejudice to defendant from government's untimely production of officer's rough notes reflecting discrepancies with his testimony; defense eventually received the rough notes and was able to fully cross-examine the officer about discrepancies in his report), *cert. denied*, 519 U.S. 1082, 117 S.Ct. 748, 136 L.Ed.2d 686 (1997); *United States v. Manning*, 56 F.3d 1188, 1199 (9th Cir. 1995) (no prejudice resulting from government's production of letter to defense after trial commenced).

 The People's first witness in Petitioner's trial was called on February 11, 2003. (LD 3 at 18, 25.) On Thursday, February 20, 2003, after four days of testimony and just before the People were going to rest, the prosecutor gave the defense a supplemental report about one of the People's witnesses, Sammy Macon, who had not yet testified. (*Id.* at 634–35.) The report indicated that on February 19, 2003, Detective Newton had shown Macon a photographic lineup from which she identified Petitioner "as one of the three males she saw walking through the Apple Valley parking lot on the day of the incident." (*Id.* at 636.) Before receiving this supplemental report, defense counsel stated that his knowledge of Macon was based on a July 2002 police report, which stated that Macon had seen three youths running past her motel room on the day of the crime. (*Id.* at 635.) Petitioner's defense was predicated on the fact that, to counsel's knowledge, no witness had directly identified Petitioner.[2] (*Id.* at 637.) Thus, defense counsel's opening statement and cross-examination of the People's witnesses had been based on that perception. (*Id.* at 637, 642.) Defense counsel also complained that the police could have shown Macon a photographic lineup as early as July of 2002. (*Id.* at 637.) The trial court commented that Macon's identification was "weak" and didn't really add much. (*Id.* at 646.) The court ruled that the testimony would be admitted because it was probative, and there was no "undue prejudice" to Petitioner because the court gave the defense until Monday, February 24, to interview Macon and prepare for her testimony. (*Id.* at 653, 656.) The testimony of four witnesses was then taken during the morning of February 20.[3] The court

2. The trial court noted that other witnesses had directly identified Petitioner, but defense counsel said they were "co-participants," not "lay witnesses." (*Id.* at 643.)

3. Defense counsel did not cross-examine

adjourned early, and trial did not reconvene until Monday, February 24, 2003, in the afternoon. (*Id.* at 658–93.)

Macon was the second witness to testify on February 24. She testified she lived in Room 112 of the Apple Valley Motel and had been living there for two years. (*Id.* at 710.) On an unspecified date the police came to her room and told her they had a report that three males had run into Macon's room. (*Id.* at 711.) The police searched Macon's room with her consent and found nothing. (*Id.*) Sometime before this incident, Macon was on her way from her room to another room when she saw three young Black males "walking kind of fast." (*Id.* at 712.) Two of them passed in front of her, and the third almost bumped into her. (*Id.*) While testifying, Macon identified the third person as Petitioner. (*Id.* at 713–14.) Macon also testified that during the week of February 17, 2003, Detective Newton showed her a photographic six-pack from which she selected Petitioner's photo as the third man. (*Id.* at 715–16.) Defense counsel cross-examined Macon.[4] (*Id.* at 717–730, 734–38, 739–40.)

Petitioner argues that the trial court's ruling that Macon could testify as to her identification of him in the photographic lineup was a due process violation and was prejudicial. (Petition at Ground 1.) The Court of Appeal, whose decision was the last reasoned decision under *Davis,* analyzed whether the trial court erred under California law.[5] (LD 7 at 10–16.) A state law claim is not cognizable on federal habeas review. *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (citation omitted).

The Court of Appeal also analyzed whether there was prejudice under *People v. Watson,* 46 Cal.2d 818, 836, 299 P.2d 243 (1956), *cert. denied,* 355 U.S. 846, 78 S.Ct. 70, 2 L.Ed.2d 55 (1957), which is not the standard for a constitutional violation. (LD 7 at 16–17; *see Bains v. Cambra,* 204

three of the four witnesses on February 20 but asked the court to have them brought back so he could examine them on Monday, February 24. (*Id.* at 675, 686, 691.) The court granted his requests. (*Id.*)

4. For example, on cross-examination, Macon testified that her identification of Petitioner took place seven months after the fact, she could not be 100% sure of her identification due to the passage of time, and she might have been more sure if she had been asked to make an identification at the time. (LD 3 at 728–29, 735, 738.)

5. In California, Petitioner argued that the failure to disclose the identification testimony violated Cal.Penal Code § 1054.1, which provides, in part: "The prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting at-

torney knows it to be in the possession of the investigating agencies: [¶](a) The names and addresses of persons the prosecutor intends to call as witnesses at trial. [¶] ... (f) Relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at trial ...."

In federal court, there is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey,* 429 U.S. 545, 560, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). The facts in *Weatherford* are analogous to those here. In *Weatherford,* the court held that the prosecution's concealment of a witness's identity and its failure to disclose that he would be a witness, which allegedly "interfered with [defense counsel's] preparations for trial," was not a due process violation. *Id.* at 550, 559–60, 97 S.Ct. 837.

F.3d 964, 975 (9th Cir.) ("by deeming two errors as being merely errors under state evidentiary law, the California Court of Appeal improperly selected the *Watson* standard rather than the *Chapman* standard in evaluating those errors"), *cert. denied,* 531 U.S. 1037, 121 S.Ct. 627, 148 L.Ed.2d 536 (2000). Because the state court applied the wrong legal standard,[6] this Court has conducted a *de novo* review of the alleged violation of due process.

Petitioner's federal due process rights were not violated by the mid-trial disclosure.[7] First, there is no *Brady* violation. *Brady* does not hold that a late disclosure is a violation of due process. More importantly, a prosecutor is not required to produce inculpatory information to the defense. The fact that Macon selected Petitioner from the line-up is not exculpatory. Petitioner has failed to cite any authority that supports the proposition that the prosecution must help the defense prepare its case.[8] *See Gray v. Netherland,* 518 U.S. 152, 168, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996) ("To put it mildly, these cases do not compel a court to order the prosecutor to disclose his evidence; their import, in fact, is strongly against the validity of petitioner's [due process] claim.").

■■ Second, even if the prosecution had some duty to turn over the information earlier than it did, any prejudice was cured by the trial court's permitting defense counsel to prepare for three days before cross-examining Macon. *See Taylor v. Illinois,* 484 U.S. 400, 413, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) ("Prejudice . . . could be minimized by granting a continuance"). The trial court additionally accommodated all of Petitioner's counsel's February 20 requests for deferral of cross-examination until after Macon testified on Monday, February 24. (LD 3 at 675, 686, 691.) It is also clear from the record that Petitioner's counsel vigorously and thoroughly cross-examined Macon. (*Id.* at 717–730, 734–38, 739–40.)

Third, Macon's testimony was unnecessary to convict Petitioner of the crime. (LD 7 at 12.) Detective Galindo testified that very shortly after the crime was committed he detained Petitioner in the vicinity of the crime. (LD 3 at 333–34, 338, 339–40.) Detective Hunt testified that shortly after the crime the police searched Muriel Ott's house and found a "blue-collared button-up shirt" that was "stuffed down behind the stereo." (*Id.* at 372, 375–77.) Naquia Ott is the sister of Daniel Ott, one of Petitioner's accomplices. (*Id.* at 540.) Muriel Ott is Naquia's and Daniel's mother, and they live together in Muriel's house. (*Id.* at 541.) Naquia saw Petitioner wearing the blue shirt on the day on the morning of the robbery. (*Id.* at 553.) He was still wearing the shirt after he left

---

6. The Court notes that the challenge to the trial court's ruling was not presented to the Court of Appeal as a federal question. (LD 4 at 10–19.) On the other hand, it was arguably presented as a federal question on state habeas to the California Supreme Court. (LD 14 at 4) (citing to *Giles v. Maryland,* 386 U.S. 66, 87 S.Ct. 793, 797, 17 L.Ed.2d 737 (1967)). In *Giles,* the court found that there were two police reports that the state courts had not considered that might be favorable to the defense. *Id.* at 74.

7. Petitioner does not explain in what way his federal due process rights were violated. *See Langford v. Day,* 110 F.3d 1380, 1389 (9th Cir.1996) (a petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process"), *cert. denied,* 522 U.S. 881, 118 S.Ct. 208, 139 L.Ed.2d 144 (1997).

8. Petitioner's counsel's chief complaint is that he didn't prepare his case with the knowledge that there was a "lay witness" who could place Petitioner near the scene of the crime on the day of the crime. (LD 3 at 643.)

Muriel's house and then returned in the afternoon. (*Id.*) He was not wearing the shirt when he was detained by the police later in the afternoon. (*Id.* at 554.)

Benjamin Dupree, Naquia Ott's and Daniel Ott's brother, pled guilty to the Sims robbery. (*Id.* at 584, 587.) Dupree testified that he, Daniel Ott, Chris Farley, and Petitioner robbed Sims. (*Id.* at 590–91.) Dupree testified that the blue shirt belonged to Petitioner. (*Id.* at 612.)

Daniel Ott admitted in Juvenile Court that he robbed Sims, along with Dupree, Farley, and Petitioner. (*Id.* at 477, 481.) After the robbery, Daniel, Benjamin, and Petitioner, went to the Ott garage and emptied some of the property they stole from Sims out of their pockets. (*Id.* at 492.)

Thus, Macon's identification of Petitioner was not needed to convict Petitioner of the robbery.

In sum, this ground is really a state law claim that this Court cannot review. Petitioner has not supported his bare due process allegation with any authority. The late disclosure of *inculpatory* information is not a *Brady* violation, nor a due process violation. *See Weatherford*, 429 U.S. at 559–60, 97 S.Ct. 837 ("*Brady* is not implicated here where the only claim is that the State should have revealed that a government informer would present the eyewitness testimony of a particular agent against the defendant at trial."). And, finally, even if it were a constitutional violation, Petitioner was not prejudiced as there was ample evidence to convict him "without Macon's independent identification testimony." (LD 7 at 12.) Petitioner's claim fails.

## B. GROUNDS TWO AND THREE: *Ineffective Assistance*

To succeed on a claim of ineffective assistance of trial counsel, Petitioner must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Wiggins*, 539 U.S. at 521, 123 S.Ct. 2527. The petitioner bears the burden of establishing both components. *Williams*, 529 U.S. at 390–91, 120 S.Ct. 1495; *Smith v. Robbins*, 528 U.S. 259, 285–86, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). "Deficient performance is performance which is objectively unreasonable under prevailing professional norms." *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir.1990) (citing *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052). Prejudice "focuses on the question whether counsel's deficient performance renders the ... proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *Williams*, 529 U.S. at 393 n. 17, 120 S.Ct. 1495. The Court need not address both components if Petitioner makes an insufficient showing on one. *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052.

■■■■ The *Strickland* test also applies to claims of ineffective assistance by appellate counsel. *See Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *see also Smith*, 528 U.S. at 285–86, 120 S.Ct. 746 ("the proper standard for evaluating [a petitioner's] claim that appellate counsel was ineffective ... is that enunciated in *Strickland*"). The test for deficient performance is the same as for trial counsel. *Id.* at 285, 120 S.Ct. 746 (petitioner "must first show that his counsel was objectively unreasonable"). To establish prejudice, a petitioner "must show a reasonable probability that, but for his counsel's [error], he would have prevailed on his appeal." *Id.* (citation omitted). Appointed appellate counsel is not required "to press nonfrivolous points re-

quested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). "[A] per se rule that the client, not the professional advocate, must be allowed to decide what issues are to be pressed ... seriously undermines the ability of counsel to present the client's case in accord with counsel's professional evaluation." *Id.* "There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." *Id.* at 752, 103 S.Ct. 3308.

Because there is no reasoned decision on these two grounds, the Court has conducted an independent review to determine whether the state decisions were contrary to, or involved an unreasonable application of, "clearly established" Supreme Court precedent. *Delgado*, 223 F.3d at 982.

■■■ Petitioner argues that his trial counsel's failure to object to hearsay testimony was ineffective. (Petition at Ground Two.) Petitioner does not explain in his petition which testimony was objectionable. (*Id.*) However, based on the pages from the reporter's transcript attached to the petition, Respondent assumed that it related to the playing of a tape-recorded interview of Chris Farley. (Answer at 13.) In his responses, Petitioner did not contradict Respondent's assumption.

Chris Farley refused to testify at Petitioner's trial, and the trial court found he was "unavailable." (LD 3 at 626–27.) Detective Chambers interviewed Farley on the same day as the robbery. (*Id.* at 677; LD 2 at 41–50.) The tape of that interview was played for the jury without objection by defense counsel. (LD 3 at 677–78.) Farley said that he, Ott, Dupree, and Petitioner were involved in the robbery of Sims, and that Petitioner had a gun. (LD 2 at 47; *see* LD 3 at 685.) On the other hand, Farley's plea transcript indicated the opposite and those portions were read to the jury. (*Id.* at 967–68.)

Even assuming Petitioner's counsel's failure to object was deficient, Petitioner was not prejudiced by Farley's statement.[9] Petitioner was separately implicated in the crime by other participants, Ott and Dupree. (LD 3 at 477, 481, 492, 590–91, 612.) There was physical evidence that implicated him in the crime, *i.e.*, Petitioner's blue shirt with the gun inside. (*Id.* at 376, 378–79, 382, 502–03, 506, 552–54, 559–60, 571, 612.) Petitioner was detained by the police near the scene of the crime shortly after it was committed. (*Id.* at 333–34, 338–40.) Farley's statement that Petitioner was involved—with virtually no supporting detail—was cumulative, relatively weak compared to the other evidence, and did not "render[ ] the ... proceeding fundamentally unfair." *Lockhart*, 506 U.S. at 372, 113 S.Ct. 838 (citation omitted).

Therefore, Petitioner's claim of ineffective assistance of trial counsel fails.[10]

---

**9.** Petitioner has not explained how his counsel's performance was deficient, nor in what way he was prejudiced. *See Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052 ("When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."); *Williams*, 529 U.S. at 390–91, 120 S.Ct. 1495; *see also Ortiz v. Stewart*, 149 F.3d 923, 933 (9th Cir.1998) (petitioner failed to

indicate how he was prejudiced), *cert. denied*, 526 U.S. 1123, 119 S.Ct. 1777, 143 L.Ed.2d 806 (1999); *Smith v. Ylst*, 826 F.2d 872, 876 (9th Cir.1987) ("a defendant must point to specific errors or omissions which prejudiced his defense"), *cert. denied*, 488 U.S. 829, 109 S.Ct. 83, 102 L.Ed.2d 59 (1988).

**10.** To the extent Petitioner is arguing a Confrontation Clause violation (Petition at Ground 2), any such error is harmless for the

Likewise, because he was not prejudiced by his trial counsel's allegedly deficient performance, it cannot have been deficient of his appellate counsel to raise the issue on direct appeal (Ground Three). *Jones,* 463 U.S. at 751, 103 S.Ct. 3308.

## C. GROUND FOUR: Accomplice Testimony

This ground is a mix of a state law claim and a federal claim. The state law claim is not cognizable on federal habeas review. *See Pulley,* 465 U.S. at 41, 104 S.Ct. 871; *McGuire,* 502 U.S. at 67, 112 S.Ct. 475.

Under California law, Petitioner argues that the only evidence supporting the jury's finding of a weapon enhancement [11] was the uncorroborated testimony of one of his accomplices, Daniel Ott. (Supp. Petition at 22–23 (citing to Cal.Penal Code § 1111).)

 However, there is no independent federal constitutional requirement that accomplice testimony be corroborated. *See United States v. Augenblick,* 393 U.S. 348, 352, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969) ("When we look at the requirements of procedural due process, the use of accomplice testimony is not catalogued with constitutional restrictions."). Ott's testimony was not incredible or insubstantial on its face. Ott admitted in Juvenile Court that he, along with three other boys, one of whom was Petitioner, had robbed Sims' home. (LD 3 at 477, 479, 480–81.)

Ott testified that he discovered Petitioner had a gun sometime during the crime, but he didn't remember when.[12] (*Id.* at 502–03.) *Laboa v. Calderon,* 224 F.3d 972, 979 (9th Cir.2000) ("As a state statutory rule, and to the extent that the uncorroborated testimony is not 'incredible or insubstantial on its face,' the rule [in Penal Code § 1111] is not required by the Constitution or federal law.") (citations omitted); *United States v. Lopez,* 803 F.2d 969, 973 (9th Cir.1986) ("The uncorroborated testimony of an accomplice is enough to sustain a conviction unless the testimony is incredible or unsubstantial on its face."), *cert. denied,* 481 U.S. 1030, 107 S.Ct. 1958, 95 L.Ed.2d 530 (1987) (citations omitted).

 Nor was Petitioner arbitrarily deprived of a state law entitlement by an alleged violation of Cal.Penal Code § 1111. *Laboa,* 224 F.3d at 979 (citing *Hicks v. Oklahoma,* 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980)).

The *Hicks* case does not provide any general authority for a federal habeas court to dispute a state's interpretation of its own laws. *Clemons v. Mississippi,* 494 U.S. 738, 747, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). The Court of Appeal, whose decision was the last reasoned decision under *Davis,* analyzed Petitioner's challenge only under California law. (LD 7 at 17.) The court held that California law permitted a weapon enhancement find-

---

same reason that he was not prejudiced by his counsel's performance. *See Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (Under the harmless error standard, the inquiry is whether the error had a "substantial and injurious effect or influence in determining the jury's verdict.") (citation omitted); *see Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (Confrontation Clause errors are subject to harmless error analysis; factors include importance of the testimony in the prosecution's case, whether the testimony

was cumulative, the presence or absence of evidence corroborating or contradicting the testimony on material points, the extent of cross-examination permitted, and overall strength of the prosecution's case).

11. The jury found that Petitioner personally used a firearm in the robbery. (LD 7 at 2.)

12. Petitioner himself acknowledges that Ott testified he saw Petitioner with a gun during the robbery. (Supp. Petition at 22.)

ing—as opposed to a conviction for an offense—to be based solely on uncorroborated accomplice testimony "provided there is corroborating evidence connecting defendant to the commission of the underlying offense." (*Id.* (citation omitted).); *see Laboa,* 224 F.3d at 979 (corroborative evidence " 'need not corroborate every fact to which the accomplice testified' " and " 'is sufficient if it tends to connect the defendant with the crime in such a way as to satisfy the jury that the accomplice is telling the truth.' ") (citation omitted). Here, there is sufficient corroborating evidence connecting Petitioner to the commission of the underlying offense. As addressed in Ground One, there was ample evidence to convict Petitioner of the underlying offense of robbery.

██ Moreover, the Court of Appeal found that even if corroborating evidence were necessary under California law, "the gun used in the robbery was the gun found in the blue-collared shirt and ... [Petitioner] was wearing the blue-collared shirt at the time of the robbery." (LD 7 at 17.) Detective Hunt testified that he found a blue-collared shirt behind a stereo system at the Ott home. Wrapped inside the shirt was a loaded .22 caliber revolver. (LD 3 at 376, 378–79, 382.) Ott's sister testified that she saw Petitioner wearing the shirt on the day of the robbery and later saw him in different clothes. (LD 3 at 552–54, 559–60, 571.) Ott also testified that Petitioner put on different clothes at his home after the robbery. (LD 3 at 506.)

██ Petitioner's federal claim is that the evidence was insufficient to find he personally used a gun in the robbery. (Supp. Petition at 24; Supp. Reply at 3–4.) "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397

U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be ... to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (footnote omitted). This inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt" [but] "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 318–19, 99 S.Ct. 2781 (citations omitted). A reviewing court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* at 319, 99 S.Ct. 2781.

As described above, the record evidence is more than sufficient for a rational trier to fact to find that Petitioner personally used a gun during the robbery beyond a reasonable doubt. Petitioner's claim fails.

## V.

### RECOMMENDATION

For the reasons discussed above, it is recommended that the District Court issue an Order (1) adopting this Report and Recommendation; and (2) directing that judgment be entered denying the Petition and dismissing this action with prejudice.

DATED: May 1, 2008.